**In re Jim WHITFIELD and Investment Centers of America, Inc.**

No. 09–03–246–CV.

Court of Appeals of Texas, Beaumont.

Submitted on June 6, 2003.

Decided Aug. 28, 2003.

Martin S. Schexnayder, Brenton P. Monteleone, Wilson, Elser, Moskowitz, Edelman & Dicker, LLP, Houston, for appellants.

Larry C. Hunter, Law Offices of Larry C. Hunter, Vidor, for appellees.

Before McKEITHEN, C.J., BURGESS and GAULTNEY, JJ.

## OPINION

DAVID B. GAULTNEY, Justice.

Jim Whitfield and Investment Centers of America, Inc. (ICA) seek mandamus relief from the trial court's order denying their motion to compel arbitration. Thomas R. Rash, Sr., Jeff Rash, and TCT Industries, Inc. (collectively "Rash") sued Whitfield and ICA (collectively "Whitfield") for fraud and negligence in the handling of two investment accounts. Upon opening the accounts with Whitfield, an investment representative with ICA, the Rashes signed "Disclosure Agreements" containing arbitration clauses. The arbitration clause in each agreement provided that "all controversies that may arise between us ... shall be determined by arbitration...." Relying on the arbitration clauses, Whitfield filed a plea in abatement of the suit, or in the alternative, a motion compelling arbitration. The trial court denied the plea and the motion, and Whitfield filed this petition for mandamus.

■ When there is no adequate remedy by appeal, mandamus is available as an extraordinary remedy to correct a clear abuse of discretion or the violation of a legal duty. *In re J.D. Edwards World Solutions Co.,* 87 S.W.3d 546, 548 (Tex.2002)(orig.proceeding). A trial court abuses its discretion if it errs in determining what the law is or in applying the law to the facts. *In re Bruce Terminix Co.,*

988 S.W.2d 702 (Tex.1998) (orig.proceeding).

■ The trial court's order denying Whitfield's motion finds that Whitfield did not prove the existence of the arbitration agreements, because he did not introduce the agreements into evidence at the evidentiary hearing. Whitfield's attorney simply stated at the hearing he was relying on the sworn evidence attached to his verified plea in abatement and motion to compel arbitration. An authenticated copy of the Disclosure Agreements with the arbitration provision was attached to the motion to compel arbitration.

■ When one party denies the existence of a binding arbitration agreement, the trial court may decide whether to compel arbitration on the basis of uncontroverted affidavits, pleadings, discovery, and stipulations. *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 269 (Tex.1992)(orig.proceeding). If a material fact is controverted, the trial court must conduct an evidentiary hearing. *Id.* But the existence of the arbitration clauses in the Disclosure Agreements was not a disputed material fact below. When asked at the May 2003 hearing if the arbitration clauses existed, Rash stated "they exist" and "we ... signed [them]."

■ And Rash judicially admitted the existence of the arbitration clauses in the petition on file with the court. Assertions of fact, not pleaded in the alternative, in the live pleadings of a party to the suit are formal judicial admissions. *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 568 (Tex.2001). Thomas Rash never asserted below that the arbitration agreements did not exist or that he and Jeff Rash did not sign the documents bearing their signatures; he admitted they did so. Since the existence of the arbitration agreement was uncontroverted below,

Whitfield was not required to formally introduce into evidence his sworn plea in abatement and motion to compel arbitration with attached, authenticated copies of the Disclosure Agreements and his own affidavit.

Evidence regarding uncontroverted matters, including the existence of the arbitration agreements, was before the court in the form of verified pleadings, judicial admissions, an affidavit, and authenticated documentary evidence. The trial court abused its discretion in finding that Whitfield did not establish the existence of an arbitration agreement. Issue one is sustained.

■ In issue two, Whitfield contends the trial court erroneously found that no one signed the Disclosure Agreement for or on behalf of TCT. Implicit in this finding is the conclusion that TCT is not bound by the arbitration clause. Disputing the trial court's finding, Whitfield says an agent or representative did sign the agreement on TCT's behalf. Whitfield stated in the affidavit attached to the sworn plea in abatement that the Rashes and "their company, TCT Industries, Inc.," opened the accounts with ICA. The account's Disclosure Agreement, dated August 16, 2000, does not contain a signature of anyone expressly signing as an agent or representative of TCT. The signatures on the document are those of Tommy Rash, Jeff Rash, and Jim Whitfield.

■ The Rashes never claimed below that TCT was not a party to the Disclosure Agreement or that Tommy Rash was not acting as the representative of TCT when he signed the agreement. Indeed, the contrary is true. Rash's petition expressly states that one account "was established by Defendants under the name of TCT Industries, Inc. and Tommy Rash, acting as president of said corporation" "on or about August 16, 2000." The statement is

a clear and unequivocal judicial admission and "has conclusive effect and bars the admitting party from later disputing the admitted fact." *Holy Cross Church of God*, 44 S.W.3d at 568. A further admission occurred at the May 2003 hearing, when Tommy Rash acknowledged he signed the document containing the arbitration agreement, and Rash indicated he was the representative for TCT.

Rash again argues Whitfield should have offered the petition and the plea in abatement with the attached affidavit and Disclosure Agreements into evidence at the May 2003 hearing. For the reasons stated in issue one, the parties were not required to offer their sworn pleadings into evidence. Rash's second amended petition and Whitfield's plea in abatement/motion to compel arbitration (with attachments) were part of the record, and Rash's attorney used the pleadings and attachments himself to question witnesses during the hearing.

■ The general rule of law in such circumstances is that "a corporate officer's acts on the corporation's behalf are deemed corporate acts." *ACS Investors, Inc. v. McLaughlin*, 943 S.W.2d 426, 432 (Tex.1997). A correct application of the law to the facts necessitates a finding that Rash signed the agreement on behalf of TCT. In finding that no one signed the agreement on behalf of TCT, the trial court misapplied the law to the facts. Issue two is sustained.

■ The trial court also stated in its order that Whitfield failed to prove the arbitration agreements were subject to the Federal Arbitration Act. Rash argues there was no evidence introduced into the record to establish the FAA applied. We have already stated the arbitration agreement was shown to exist; they apply to

the Rashes, TCT, Whitfield, and ICA; and the agreements were before the trial court.

■ If there is no express agreement to arbitrate under the FAA, a party may establish the applicability of the FAA by showing the transaction affects or involves interstate commerce. *In re Kellogg Brown & Root,* 80 S.W.3d 611, 617 (Tex. App.-Houston [1st Dist.] 2002, orig. proceeding). The Disclosure Agreements attached to the plea in abatement recite that ICA is a registered securities broker/dealer, and the testimony in the record reveals the accounts involved the investment of funds. The sale of securities has been held to involve interstate commerce. *See Eurocapital Group Ltd. v. Goldman Sachs & Co.,* 17 S.W.3d 426, 430 (Tex.App.-Houston [1st Dist.] 2000, no pet.); *Thomas James Assoc., Inc. v. Owens,* 1 S.W.3d 315, 319 (Tex.App.-Dallas 1999, no pet.); *Shearson Lehman Bros., Inc. v. Kilgore,* 871 S.W.2d 925 (Tex.App.-Corpus Christi 1994, orig. proceeding). The Federal Arbitration Act applies. Issue three is sustained.

■ In his fourth issue, Whitfield contends the trial court abused its discretion when it found the arbitration agreements unenforceable because of fraud in the inducement "as to the contract as a whole." In a FAA case, the Texas Supreme Court has held that if the defense of fraudulent inducement pertains to the execution of the entire contract rather than the arbitration provision itself, the claim is subject to arbitration. *See In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 756 (Tex.2001) (orig.proceeding); *see also Kilgore,* 871 S.W.2d at 928–29. In finding that fraudulent inducement as to the contract as a whole made the arbitration clause unenforceable, the trial court incorrectly applied the law to the facts in this FAA case.

The Rashes assert that their fraud in the inducement claim relate to the arbitra-tion clause. However, the pleadings and evidence do not support that assertion. Rash's complaint is that Whitfield represented that the placement of investments with him would yield a better return than Rash's current investments elsewhere. These alleged representations pertain to an inducement to enter into the contract as a whole; they do not specifically relate to the arbitration agreements, as they must, if they are to defeat an arbitration clause. *See In re FirstMerit Bank, N.A.,* 52 S.W.3d at 756. There is no evidence that Whitfield made any false material representations with regard to the arbitration clauses. We sustain issue four.

Having sustained the issues on the substantive relief requested by Whitfield, we need not address issue five, which alleges bias of the trial judge. We conditionally grant the petition for mandamus and direct the trial court to abate the proceedings below pending arbitration of all claims in accordance with the agreement. The writ will not issue unless the trial court fails to comply with this opinion.

WRIT CONDITIONALLY GRANTED.