In The



Court of Appeals



Ninth District of Texas at Beaumont






NO. 09-03-172 CV







IN RE GTE MOBILNET OF SOUTH TEXAS LIMITED PARTNERSHIP,


d/b/a VERIZON WIRELESS









Original Proceeding






MEMORANDUM TO CLERK


 You are directed to make the following correction in the opinion dated December 18,
2003:

 On page 7, in the last line of the last paragraph, change the case citation beginning
page number from 705 to 704.

 You will give notice of the correction of the original opinion by sending a copy of
corrected page 7, accompanied by this memorandum, to all interested parties who received
a copy of the original opinion.

 Entered this the 1st day of March, 2004.

 PER CURIAM

In The


Court of Appeals


Ninth District of Texas at Beaumont





NO. 09-03-172 CV







IN RE GTE MOBILNET OF SOUTH TEXAS LIMITED PARTNERSHIP
,


d/b/a VERIZON WIRELESS









Original Proceeding






O P I N I O N



 GTE Mobilnet of South Texas Limited Partnership, d/b/a Verizon Wireless
(Verizon) filed a petition for writ of mandamus (No. 09-03-172-CV) and an interlocutory
appeal (No. 09-03-141-CV), both of which arise from orders entered by the 60th District
Court. In an order signed February 25, 2003, Judge Gary Sanderson denied Verizon's
motion to compel arbitration. That same day, Judge Sanderson also entered a temporary
injunction. 

 An order granting a temporary injunction is subject to interlocutory appeal. See Tex.
Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (Vernon Supp. 2004). Likewise, an order
denying arbitration under the Texas General Arbitration Act is challenged by interlocutory
appeal, but an order denying arbitration under the Federal Arbitration Act must be contested
by mandamus. See Jack B. Anglin Co., Inc. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992); Tex.
Civ. Prac. & Rem. Code Ann. §§171.001-.098 (Vernon 1997 and Supp. 2004) (the Texas
Act); and 9 U.S.C. §§ 1-16 (1999)(the Federal Act). The arbitration provision at issue in this
case provides all claims are to be decided by binding arbitration pursuant to the Federal Act. 
It further provides that Cellular Max agrees the contract and the obligations to be performed
pursuant to it constitute interstate commerce. Cellular Max does not contest the application
of the FAA rather than the TAA. We therefore find Verizon's complaint regarding the
motion to compel arbitration is properly brought in the petition for mandamus. (1) See In re
Kellogg Brown & Root, 80 S.W.3d 611, 616-17 (Tex. App.--Houston [1st Dist.] 2002, orig.
proceeding).

 We first address the trial court's finding the motion to compel arbitration should be
denied for the reason that Verizon failed to produce any evidence establishing its standing
to rely upon the arbitration provisions contained in the contract. In response to Verizon's
motion to compel arbitration, Cellular Max claimed Verizon did not prove it was the same
entity that executed the arbitration provisions or that it was assigned the contract, thereby
failing to establish there was an arbitration agreement between the parties. Cellular Max's
second amended original petition does not place at issue that GTE Wireless is not doing
business under the assumed name of Verizon Wireless as the pleading is not verified. See
Tex. R. Civ. P. 93(14).

 Moreover, Cellular Max's pleadings are at best contradictory. While Cellular Max
did assert "'Verizon Wireless' is now a separate and distinct entity from GTE Mobilnet of
South Texas Limited Partnership. . .", Cellular Max styled the action as against "VERIZON
As SUCCESSOR IN INTEREST TO GTE MOBILNET OF SOUTH TEXAS LIMITED
PARTNERSHIP . . . ." and acknowledged "[t]he former GTE MOBILNET OF SOUTH
TEXAS LIMITED PARTNERSHIP is or was one legal entity which is now doing business
as Verizon Wireless." Thus evidence that Verizon is a successor in interest to GTE Wireless
was before the court in the form of judicial admissions. See In re Whitfield, 115 S.W.3d 753,
756 (Tex. App.--Beaumont 2003, orig. proceeding). Accordingly, we find the trial court
abused its discretion in finding Verizon did not establish its standing to rely upon the
arbitration provisions contained in the contract.

 The trial court further found the motion to compel arbitration should be denied for the
reasons that Verizon fraudulently induced Cellular Max to enter into the arbitration
provisions in the contract; that Verizon acted unconscionably in the manner in which it
secured Cellular Max's execution of the arbitration provision in the contract; and that
Verizon waived any right to seek arbitration by entering into a collateral agreement with
Cellular Max that in the event of a dispute it would exercise its option in favor of litigation. 
All of these findings rely upon evidence of oral representations made by Verizon to Cellular
Max that Verizon would not enforce the arbitration agreement.

 As this court recently wrote in New Concept Constr. Co., Inc. v. Kirbyville Consol.
Indep. Sch. Dist., No. 09-03-124-CV, 2003 WL 22351425, at *1 (Tex. App.--Beaumont Oct.
16, 2003, no pet. h.), 

 [w]e ascertain and give effect to the parties' intentions as expressed in the
document itself. See Lopez v. Munoz, Hockema & Reed, L.L.P., 22 S.W.3d
857, 861 (Tex. 2000). . . . Only when the court finds the contract ambiguous
may the court consider parol evidence of the parties' intentions. See National
Union Fire Ins. Co. v. CBI Indus., Inc., 907 S.W.2d 517, 520 (Tex. 1995). 
When a contract is not ambiguous, the contract should be enforced as written. 
Lopez, 22 S.W.3d at 862. 


The contract contains disclaimers of reliance on prior representations or agreements, a
merger clause and a requirement that any modifications be in writing. 

 4. AGENT REPRESENTATIONS. . . . .

 

 . . . .

 

 4.2 No Inducements. Agent represents and warrants that GTE
Wireless has made no representations or guarantees, express or implied,
written or verbal, of any nature whatsoever to induce Agent to enter
into this Agreement or to perform its obligations hereunder which are
not expressly set forth in this Agreement.

 

 4.3 No Reliance. Agent represents and warrants that Agent is not
relying for any purpose whatsoever on any representations or
guarantees made by GTE Wireless which are not expressly set forth in
this Agreement.

 

 4.4 Negotiations. Agent acknowledges that there have been
extensive negotiations between itself and GTE Wireless that preceded
the parties entering this Agreement, and that as part of the negotiations,
the Agent has been provided the opportunity to consult with an attorney
of its choice concerning this Agreement and the business relationship
between GTE Wireless and the Agent. The Agent has made a decision
of whether or not to retain an attorney to review this Agreement and to
advise the Agent. The Agent is not relying upon any representation
made by GTE Wireless regarding the meaning or effect of any of the
terms of this Agreement. 

 

 . . . .

 

 15.16 Entire Agreement; Amendments; Binding Effect. Both GTE
Wireless and Agent have read this Agreement and understand and
accept the terms, conditions and covenants contained herein as
necessary to maintain GTE Wireless's high business standards and to
protect the goodwill of GTE Wireless and its Marks. No
representation, promise, inducement, statement or intention relating to
the transactions contemplated by this Agreement has been made by any
party which is not set forth in this Agreement or the Exhibits and
Addenda attached hereto and incorporated herein by reference. This
Agreement, including its Exhibits and Addenda, which are attached
hereto and incorporated herein by this reference, sets forth the entire
understanding between the parties and supersedes all previous
agreements, arrangements and understanding between the parties,
whether verbal or written. This Agreement may not be amended except
in writing, signed by authorized representatives of both parties, unless
otherwise provided in this Agreement. This Agreement and any
amendments hereto shall be binding upon the parties hereto, their
respective executors, administrators, heirs, assigns and successors in
interest, if any.


There has been no claim in this case that the Agreement is ambiguous.

 "Negotiations preceding a written contract should not displace the terms of the written
contract. When experienced executives represented by counsel voluntarily sign a contract
whose terms they know, they should not be allowed to claim fraud in any earlier oral
statement inconsistent with a specific contract provision." Fisher Controls Intern., Inc. v.
Gibbons, 911 S.W.2d 135, 141-42 (Tex. App.--Houston [1st Dist.] 1995, pet. denied)
(citations omitted). "Otherwise, contracts would be 'nothing more than a scrap of paper.'" 
Id. (quoting Howeth v. Davenport, 311 S.W.2d 480, 482 (Tex. Civ. App.--San Antonio
1958, writ ref'd n.r.e.)). Cellular Max had "no right to rely" upon the oral representations
preceding the written contract and that evidence was improperly considered by the trial court. 
See In re Media Arts Group, Inc., 116 S.W.3d 900, 909 n. 18 (Tex. App.--Houston [14th
Dist.] 2003, no pet.). See also Allied Bank of Texas v. Plaza DeVille Associates, 733 S.W.2d
566, 571 (Tex. App.--San Antonio 1987, writ ref'd n.r.e.). Consequently, the trial court erred
in denying Verizon's motion to compel on that basis.

 Lastly, the trial court found the motion to compel arbitration should be denied for the
reason that Verizon retained the discretion to resolve disputes either by arbitration or by
litigation and consequently the provision is void for lack of mutuality and consideration, and
is illusory and unconscionable. Cellular Max refers to section 10.3, providing the "Remedies
of GTE Wireless" in the event of "Default by Agent of its obligations under this
Agreement." Cellular Max focuses on subsection 10.3(e), a "catch-all" provision stating
"Any other remedy available to GTE Wireless at law or in equity." Celluar Max claims
section 10.3 permits Verizon "to escape its commitment to arbitrate, at its whim. 
Accordingly, the arbitration provision is illusory, and unenforceable due to the lack of
mutuality." 

 We first note that section 10.3(e) is limited to situations of "Default by Agent." 
Further, the "remedies" set forth in subsection (a), (b), (c) and (d) allow for termination of
the agreement, deductions taken from Agent's commissions, charge of a fee or actual
damages, and injunctive relief, respectively. Subsection (d) specifically instructs that "any
arbitrators involved in resolving any dispute . . . are specifically authorized to award
injunctive relief as a remedy." Celluar Max's equation of "remedy" with "litigation" is
simply not supported. Clearly, in light of section 10.3 in its entirety and the whole of the
Agreement, "remedy" does not mean "litigation" at the option of Verizon, but rather permits,
within the framework of arbitration, for the possibility of all types of available relief.

 Cellular Max does not refer this court to a provision of the contract permitting Verizon
to unilaterally amend or alter the arbitration agreement. See In re C & H News Co., No. 13-02-529-CV, 2003 WL 131770, at *3 (Tex. App.--Corpus Christi 2003, orig. proceeding) (not
yet released for publication); In re Bustamante, 104 S.W.3d 704, 706 (Tex. App.--El Paso
2003, no pet.); Russ Berrie and Co., Inc. v. Gantt, 998 S.W.2d 713, 718 (Tex. App.--El Paso
1999, no pet.). The arbitration provision can be invoked by either party and is binding on
both. The trial court erred in denying Verizon's motion to compel for the reason that it alone
retained the discretion to resolve disputes by litigation.

 Cellular Max further argues Verizon intentionally waived its right to arbitrate. First,
Cellular Max contends the oral representations that Verizon would litigate disputes, rather
than arbitrate, constituted an express waiver. Second, Cellular Max claims that through a
Rule 11 Agreement, Verizon agreed to litigate. (2)

 As noted above, the oral representations made before Cellular Max entered into the
contract were not properly before the trial court and cannot be considered on appeal to vary
the terms of the written agreement. The Rule 11 Agreement clearly does not represent a
waiver of Verizon's right to arbitrate but recognizes the temporary injunction is subject to
interlocutory appeal and is intended to maintain the status quo until those appeals are
exhausted. Verizon did not waive arbitration by entering into that Agreement.

 For all of these reasons, we conditionally grant the petition for mandamus and direct
the trial court to abate the proceedings below pending arbitration of all claims in accordance
with the agreement. The writ will not issue unless the trial court fails to comply with this
opinion.

 WRIT CONDITIONALLY GRANTED.


 

 DON BURGESS

 Justice

Submitted on October 16, 2003

Opinion Delivered December 18, 2003


Before McKeithen, C.J., Burgess and Hill (3), JJ.
1. The interlocutory appeal is disposed of in the companion case, GTE Mobilnet of
South Texas Ltd. Partnership d/b/a Verizon Wireless v. Cellular Max, Inc., No. 09-03-141-CV (Tex. App.--Beaumont December 18, 2003, no pet. h.) (not yet released for publication).
2. This argument was not presented to the trial court in Cellular Max's response to
Verizon's motion to compel arbitration. 
3. The Honorable John Hill, sitting by assignment pursuant to Tex. Gov't Code Ann.
§ 74.003(b) (Vernon 1998).