Appeal Dismissed; Petition for Writ of Mandamus Denied and Majority
Opinion filed September 28, 2004









Appeal Dismissed; Petition for Writ of Mandamus Denied
and Majority Opinion filed September 28, 2004.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-03-01097-CV

____________

 

AMERICAN MEDICAL
TECHNOLOGIES, INC., Appellant

 

V.

 

JOHN A. MILLER, Appellee

 



 

On Appeal from the 113th
District Court

Harris County, Texas

Trial Court Cause No. 03-23267

 



 

NO. 14-03-01106-CV

____________

 

IN RE AMERICAN MEDICAL
TECHNOLOGIES, INC. 

____________

 

Original Proceeding

Writ of Mandamus

 



 

 

 








M A J O R I T Y   O P I N I O N

I.        INTRODUCTION

John A. Miller sued American Medical
Technologies, Inc. (AAMT@) for benefits
allegedly due under an employment agreement. 
AMT moved to compel arbitration based on the agreement while also
claiming there was no valid employment agreement.  The trial court denied AMT=s motion.  AMT filed an interlocutory appeal and a
petition for mandamus, alleging in both that the trial court erred in denying
AMT=s motion to compel
arbitration.  

We are asked to resolve two
questions.  First, what is the proper
procedural posture for this arbitration disputeCis it governed by
the Federal Arbitration Act and resolved by mandamus, or is it governed by the
Texas General Arbitration Act and resolved by appeal?  Second, did the trial court correctly refuse
to refer the case to arbitration?

We hold that the alleged employment
agreement affects interstate commerce and is governed by the Federal
Arbitration Act because it provides for the transfer of stock options to
Miller.  We also hold that the trial court
correctly refused to refer the case to arbitration because AMT did not satisfy
its burden to demonstrate the existence of a valid arbitration agreement, and
because issues raised in the trial court questioning the validity of the
employment agreement did not implicate the separability doctrine and therefore
did not require referral to an arbitrator. 
In short, based on the evidence before it, the trial court correctly
denied AMT=s motion to compel arbitration.  In light of these holdings, we dismiss AMT=s interlocutory
appeal for lack of jurisdiction and deny AMT=s petition for
mandamus.

II.       FACTUAL
AND PROCEDURAL BACKGROUND

In August of 2002, Miller and AMT allegedly
entered into an employment agreement. 
The alleged agreement contained terms governing benefits due upon
termination or resignation.  It also
contained a clause stating that Aany dispute or
controversy arising under or in connection with this Agreement shall be settled
exclusively by arbitration . . . .@








The parties dispute how Miller=s employment with
AMT ended.  Miller alleges that he
resigned.  AMT alleges that Miller was
terminated for cause.  In any event,
after Miller=s employment ended, AMT=s president wrote
a letter to Miller stating that the employment agreement was not valid, and
that Miller was therefore not entitled to the severance benefits provided by
the contract.  AMT=s president
offered alternate benefits in exchange for executing a severance agreement and
release, which Miller declined to accept. 
Shortly after that, Miller sued AMT, seeking damages for breach of the
employment agreement.

Based on an arbitration provision in the
alleged employment agreement, AMT moved to stay the proceedings and compel
arbitration.  In support of its motion,
AMT attached a copy of the alleged employment agreement between it and
Miller.  The trial court denied the
motion and this interlocutory appeal and petition for mandamus followed.

III.      ANALYSIS

As we previously noted, AMT=s consolidated
mandamus and appeal require us to address two issues: (1) whether the Federal
Arbitration Act or the Texas General Arbitration Act governs this arbitration
dispute, and therefore whether it is appropriately resolved by mandamus or
appeal; and (2) whether the trial court erred in refusing to compel arbitration
when AMT attached a signed copy of the alleged employment agreement to its
motion to compel.  We address each in
turn.

A.      The
FAA Governs this Case

The appropriate avenue for relief for
denial of arbitration under the Texas General Arbitration Act (ATGAA@)[1]
is an interlocutory appeal, whereas the appropriate avenue for relief for
denial of arbitration under the Federal Arbitration Act (AFAA@)[2]
is a petition for mandamus.  Jack B.
Anglin Co. v. Tipps, 842 S.W.2d 266, 272 (Tex. 1992).  Therefore, to determine the proper procedural
posture of this dispute, we must first determine whether the TGAA or the FAA
applies.








The alleged employment agreement does not
specifically invoke either the TGAA or the FAA. 
It does provide that it is to be Agoverned by and
construed in accordance with the laws of the State of Texas,@ but this language
does not preclude the application of federal law.  See Capital Income Properties-LXXX
v. Blackmon, 843 S.W.2d 22 (Tex. 1992) (AThe [FAA] is part
of the substantive law of Texas.@).  For the FAA not to apply, an agreement must
specifically exclude the application of federal law.  In re L&L Kempwood Assocs., L.P.,
9 S.W.3d 125, 127B28 (Tex. 1999).

Under the Supremacy Clause of the United
States Constitution, the FAA preempts otherwise applicable state laws,
including the TGAA.  Jack. B. Anglin,
842 S.W.2d at 271.  Federal law governs
whether a party has a right to arbitrate under the FAA.  Prudential Secs., Inc. v. Marshall,
909 S.W.2d 896, 899 (Tex. 1995).  The FAA
applies to all disputes in state or federal court arising out of a Acontract
evidencing a transaction involving commerce.@  9 U.S.C. ' 2 (1999); Jack
B. Anglin, 842 S.W.2d at 269B70.  A contract evidences a transaction involving
commerce if the contract affects interstate commerce.  Allied-Bruce Terminix Cos. v. Dobson,
513 U.S. 265, 276B77 (1995); In re Merrill Lynch Trust
Co. FSB, 123 S.W.3d 549, 553 (Tex. App.CSan Antonio 2003,
orig. proceeding); see 9 U.S.C. ' 1 (defining Acommerce@ as Acommerce among the
several States . . .@). 
We must therefore determine whether the alleged employment agreement
affects interstate commerce.








Agreements that involve the sale of
securities have been held to affect interstate commerce.  See In re Whitfield, 115 S.W.3d
753, 757 (Tex. App.CBeaumont 2003, orig. proceeding.); Eurocapital
Group, Ltd. v. Goldman Sachs & Co., 17 S.W.3d 426, 430 (Tex. App.CHouston [1st
Dist.] 2000, no pet.); Thomas James Assocs. v. Owens, 1 S.W.3d 315, 319
(Tex. App.CDallas 1999, no pet.).  The alleged employment agreement provides for
the transfer of stock options to Miller and implies that AMT is listed on the
National Association of Securities Dealers Automated Quotation System (ANASDAQ@).  We conclude that the transfer of securities
as an employment benefit affects interstate commerce in the same manner as an outright
sale of securities, and therefore, that the FAA, not the TGAA, applies to the
arbitration provision contained in the alleged agreement.  See Whitfield, 115 S.W.3d at
757; Eurocapital Group, 17 S.W.3d at 430; Thomas James, 1 S.W.3d
at 319.  Accordingly, we dismiss AMT=s interlocutory
appeal for lack of jurisdiction and instead consider AMT=s petition for
mandamus.

B.      the Trial Court Correctly Refused to Refer
the Case to Arbitration. 

We now turn to the substance of AMT=s complaint.  AMT presents two reasons the trial court
should have referred the case to arbitration. 
First, it proved a valid arbitration agreement that Miller failed to
controvert.  Second, even if some
question remained regarding the validity of the employment agreement, the
separability doctrine required that issue to be resolved by an arbitrator.  We address each issue.

1.       AMT
did not Satisfy its Burden to Prove the Existence of a Valid Arbitration
Agreement.

A trial court is compelled to order
arbitration if the parties have a valid arbitration agreement.  9 U.S.C. ' 4 (1999).  A party moving to compel arbitration must
prove (1) the existence of a valid agreement to arbitrate and (2) a dispute
that falls within the scope of the agreement. 
See Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d
211, 214 (5th Cir. 2003); J.M. Davidson, Inc. v. Webster, 128 S.W.3d
223, 227 (Tex. 2003).  Here, the parties
agree that their dispute falls within the scope of the agreement to
arbitrate.  However, they disagree
whether AMT conclusively proved that a valid agreement to arbitrate ever
existed. 

AMT states that it met its burden of
demonstrating the existence of a valid agreement to arbitrate because (a) it Aattached the
employment agreement, as evidence of the existence of the arbitration
provision,@ and (b) Athe arbitration
provision was ratified by the Affidavit of [its president].@  We will address these claims separately.

a.       Merely
attaching a copy of the employment agreement cannot satisfy AMT=s burden to prove
the existence of a valid arbitration agreement when AMT itself places the
existence of a valid agreement in issue.








First, AMT claims it met its burden by
attaching the alleged employment agreement to its motion to compel
arbitration.  However, AMT also stated in
the motion that it Areserve[d] the right to assert that the
employment agreement [was] not valid@ and claimed that
Miller was an at-will employee.  In a
supplement to the motion, AMT attached an affidavit of its president, which
also stated that A[t]here are issues in dispute regarding
the making of this contract and whether the person who signed it on behalf of
[AMT] had authority to enter into this agreement.@[3]  

In response to the motion, Miller attached
the letter he received from AMT.  It also
claimed that Athe [employment agreement] was not
executed by an officer with authority to execute such agreements,@ that the
agreement was not approved by AMT=s board of
directors, and that the agreement was neither valid nor enforceable.[4]

On this record, we cannot say that AMT
satisfied its burden to demonstrate the existence of a valid arbitration
agreement.  Although the attached
agreement does demonstrate that it contained an arbitration provision, AMT=s own position and
evidence showed that AMT disputed that a valid agreement ever existed.  Moreover, at the hearing on its motion to
compel, AMT refused to concede the existence of a valid agreement.  Therefore, the trial court could have
determined that AMT failed to satisfy its burden to demonstrate the existence
of a valid arbitration agreement merely by attaching a copy of the employment
agreement to its motion to compel.








b.       AMT
cannot ratify only part of the whole agreement.

Second, AMT alternatively claims it met
its burden because the affidavit of its president ratified the arbitration
provision.  In the affidavit, AMT=s president states
that the AArbitration Agreement contained in
Paragraph 11 of the alleged Employment Agreement has been accepted, ratified
and agreed to by [AMT].  [AMT] has
demonstrated its acceptance of the Arbitration Agreement by commencing
arbitration before the American Arbitration Association . . . .@  

AMT argues that it Ais entitled to on
the one hand ratify the arbitration provision and on the other deny the
validity of the employment agreement and portions of it.@  However, AMT cites no authority to support
this argument.[5]  To the contrary, courts have held that a
party may not ratify only a selected portion of an agreement.  See Land Title Co. of Dallas, Inc.
v. F.M. Stigler, Inc., 609 S.W.2d 754, 757 (Tex. 1980) (ARatification
extends to the entire transaction.@); Daugherty v.
McDonald, 407 S.W.2d 954, 958 (Tex. Civ. App.CFort Worth 1966,
no writ) (ATo constitute ratification, the ratifying
party must intentionally accept and agree to all material terms of the
contract.@). 
Nor may a party ratify a contract and subsequently seek to avoid the
contract.  Barker v. Roelke, 105
S.W.3d 75, 84B85 (Tex. App.CEastland 2003,
pet. denied); Missouri Pac. R.R. Co. v. Lely Dev. Corp., 86 S.W.3d 787,
792 (Tex. App.CAustin 2002, pet. dism=d).  

Because AMT cannot both accept the
arbitration provision and at the same time deny the validity of the rest of the
agreement, its purported ratification is without effect and cannot show the
existence of a valid agreement to arbitrate.

2.       AMT=s Claim that an
Employment Agreement Never Existed Made the Issue One for the Trial Court, Not
for an Arbitrator.








We next turn to AMT=s contention that
all of Miller=s defenses to arbitration backfired on him
because they implicated the separability doctrine.  We disagree that the separability doctrine
applies because this case involves a claim that AMT did not reach an agreement
with Miller, not that AMT repudiated an existing agreement.  We explain below.

a.       The
separability doctrine does not apply when the very existence of a contract is
called into question.

The separability doctrine was first
established in Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388
U.S. 395 (1967).  There, the Supreme
Court addressed whether a party=s claim that it
was fraudulently induced to sign a contract containing an arbitration clause
should be resolved by the court or referred to an arbitrator.  The Court held that, under federal law,
arbitration clauses are Aseparable@ from the
contracts in which they are contained, and therefore when a party=s claim of
fraudulent inducement is directed to the contract as a whole, rather than the
arbitration clause itself, the issue is to be determined by an arbitrator.  See id at 403B04.  Consequently, applying what has become known
as the Aseparability
doctrine,@[6] courts have held
that defenses to arbitration such as fraud, lack of mental capacity, or
illegality are arbitrable when they are directed to the entire agreement rather
than the arbitration provision specifically. 
See, e.g., Primerica Life Ins. Co. v. Brown, 304 F.3d 469,
472 (5th Cir. 2002) (lack of capacity); C.B.S. Employees Fed. Credit Union
v. Donaldson, Lufkin & Jenrette Sec. Corp., 912 F.2d 1563, 1567 (6th
Cir. 1990) (fraud); Lawrence v. Comprehensive Bus. Servs. Co., 833 F.2d
1159, 1162 (5th Cir. 1987) (illegality).








Recently, the Fifth Circuit addressed the
scope and application of the Prima Paint rule and held that when the Avery existence of
a contract@ containing the relevant arbitration
agreement is called into question, the court has the authority and
responsibility to decide the matter.  See
Will‑Drill, 352 F.3d at 218. 
In Will-Drill, the party resisting arbitration claimed no
contract existed because the proposed contract was not signed by all of the
necessary parties.  Id. at
215.  If accurate, this would mean that
no contractCand no arbitration agreementCever existed.  Without an agreement to arbitrate, the
arbitrator would have no authority to decide anything.  Id.

Will‑Drill distinguished the
more common argument made by a party that does not challenge the existence of a
contract, but rather attacks the enforceability of the agreement alleging that
the contract is void ab initio or voidable. 
Id. at 218.[7]  This type of claim is subject to the
separability doctrine contained in Prima Paint.  Under this approach, A[o]nly if the
arbitration clause is attacked on an independent basis can the court decide the
dispute; otherwise, general attacks on the agreement are for the arbitrator.@  Id.; see also Primerica Life,
304 F.3d at 472 (holding that Aunless a defense
relates specifically to the arbitration agreement, it must be submitted to the
arbitrator as part of the underlying dispute@).  As the Will-Drill court explained, the
separability doctrine applies only if there was at one time an underlying
agreement.  Will-Drill, 352 F.3d
at 218.  Although one of the parties may
later dispute the continued enforceability of the agreement, the fact that the
parties at some time reached an agreement to arbitrate gives the arbitrator the
authority to decide if the agreement continues to exist.  Id. at 218B19.  

On the other hand, when the parties never
reached an agreement to arbitrate, the separability doctrine does not apply;
only the existence of an agreement to arbitrate clothes the arbitrator with
authority to arbitrate a dispute.  See
Will-Drill, 352 F.3d at 218B19.  Courts have held that defenses such as
forgery and lack of authority must be resolved by the court, not the
arbitrator.  See, e.g., Opals
on Ice Lingerie v. Body Lines Inc., 320 F.3d 362, 370 (2d Cir.2003)
(forgery); Sphere Drake Life Ins. Ltd. v. All Am. Ins. Co., 256 F.3d
587, 591B92 (7th Cir. 2001)
(lack of authority); Sandvik AB v. Advent Int=l Corp., 220 F.3d 99, 111B12 (3d Cir. 2000)
(lack of authority).  








In short, when the very existence of an
agreement is disputed, a court, not an arbitrator, must decide at the outset
whether an agreement was reached, applying state-law principles of
contract.  See Will-Drill, 352
F.3d at 218B19.[8]

b.       AMT
claims the parties never had an employment agreement; that means the
separability doctrine does not apply.

Here, AMT disputes the very existence of
an agreement.[9]
 In its motion to compel arbitration, AMT
couched its argument as Areserving the right@ to assert that
the alleged employment agreement is not valid and that Miller was always an at-will
employee.  Even though federal policy
strongly favors arbitration, it only does so when an agreement exists.  If the possibility exists that an agreement
never was reached, federal policy does not compel referral to an arbitrator
until a court has concluded that an agreement to arbitrate did exist.  See Fleetwood Enters., Inc. v. Gaskamp,
28 F.3d 1069, 1073 (5th Cir. 2002); see also Volt Info. Scis., Inc. v. Bd.
of Trs. of Leland Stanford Junior Univ. , 489 U.S. 468, 474B75 (1989) (noting
that Athe FAA does not
confer a right to compel arbitration of any dispute at any time; it confers
only the right to obtain an order directing that Aarbitration
proceed in the manner provided for in [the parties=] agreement@); 9 U.S.C. ' 4 (directing that
the trial court is to order arbitration Aupon being
satisfied that the making of the agreement for arbitration or the failure to
comply therewith is not in issue@).

In short, the crux of AMT=s position was
that no agreement ever existed between it and Miller; the issue was for the
courtCnot an arbitratorCto decide.  Will-Drill, 352 F.3d at 216B17; Sphere-Drake,
256 F.3d at 590B91; Sandvik, 220 F.3d at 109. 








c.       AMT=s attempt to
distinguish case law does not work.

AMT attempts to distinguish this case from
Will-Drill and the cases discussed in that opinion.[10]  It points out that in those cases the party
opposing arbitration denied the existence of a valid agreement, while here, the
party opposing arbitration is not denying the existence of the agreement, but
has sued to enforce the contract.  AMT
argues that, under principles of equitable estoppel, a party cannot claim
benefits under a contract while simultaneously attempting to avoid the burdens
of the contract.  See Washington
Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 267 (5th Cir. 2004); see
In re FirstMerit Bank, N.A., 52 S.W.3d 749, 755B56 (Tex. 2001)
(noting that Aa litigant who sues based on a contract
subjects him or herself to the contract=s terms@).  In other words, Miller cannot Ahave it both ways.@

Miller would be guilty of trying to have
it both ways if he were attempting to avoid arbitration by claiming the
agreement is not valid, while also claiming that he should recover for breach
of the agreement.  Instead, he claims he
is entitled to avoid arbitration until the alleged agreement is established as
being valid.  This position is not
internally inconsistent so as to invoke equitable estoppel.  See Sandvik, 220 F.3d at 109
(finding that a party=s position is not Aat war with itself@ when the party Amaintains that the
underlying contract is valid, but asserts that the validity of the arbitration
clause must first be found by the District Court before the matter can be
referred to the arbitrators@).[11]









The rule, simply, is this: If a party
claims a valid agreement to arbitrate never existed, the trial court must
resolve the issue, regardless of which party brought the issue to the court=s attention.  See Will-Drill, 352 F.3d at 218; Sandvik,
220 F.3d at 109.

d.       The
Trial Court did not err in denying AMT=s motion to compel
Arbitration.

In conclusion, although AMT sought to meet
its burden to prove the existence of a valid arbitration agreement by attaching
a copy of the alleged employment agreement containing the arbitration
provision, all other evidence before the trial court questioned the very
existence of an agreement between the parties. 
In addition, at the hearing on its motion to compel, AMT refused to
concede the existence of a valid agreement. 
Given this record, the trial court could have concluded that AMT failed
to satisfy its burden to demonstrate the existence of a valid arbitration
agreement.  Therefore, the trial court
did not err in denying AMT=s motion to compel
arbitration.

IV.      Conclusion

We hold that the FAA applies to the
alleged employment agreement and we dismiss AMT=s interlocutory
appeal.

We also hold that evidence before the
trial court raised a question of whether a valid agreement to arbitrate ever
existed, which is a matter for the trial court, not an arbitrator, to
decide.  We deny AMT=s petition for
writ of mandamus.

 

 

/s/      Wanda McKee Fowler

Justice

 

Judgment
rendered and Majority Opinion filed September 28, 2004.

Panel
consists of Justices Fowler, Edelman, and Smith.[12]  (Edelman, J. dissenting without opinion).











[1]  Tex. Civ. Prac. & Rem. Code ' 171.001B.098.





[2]  9 U.S.C. '' 1B16 (1999).





[3]  Although the
affidavit is missing from the record, both parties agree that it was attached
to AMT=s supplement and both parties refer to it.  AMT also includes a file-stamped copy of the
supplement containing the affidavit in the appendix to its appellate brief. 





[4]  Although the
record reflects that AMT moved to strike the letter because it was a settlement
letter, the record does not contain a ruling on the motion as required by Texas
Rule of Appellate Procedure 33.1(a)(2). 
The trial court merely stated in its order, AAfter considering the motion, response, arguments of
counsel and the other pleadings on file with this Court, the Court DENIES the
motion.@  This order is
not sufficiently specific for us to determine whether the objection was
sustained or overruled.  See Dolcefino
v. Randolph, 19 S.W.3d 906, 927 (Tex. App.CHouston
[14th Dist.] 2000, pet. denied) (A[W]e
cannot infer from the record in this case that the trial court implicitly
overruled or implicitly sustained appellants' objections@).  Even if the
letter had been excluded, the affidavit of AMT=s
presidentCwhich AMT itself placed in evidenceCsimilarly reflects AMT=s
position that no valid agreement ever existed because in it AMT=s president states that both Athe making of this contract@ and whether AMT=s
signatory had authority to bind it are disputed.





[5]  AMT correctly
points out that it is entitled to plead inconsistent defenses, but the case it
cites for that proposition does not support its claim that it is entitled to
selectively ratify only the arbitration provision of the agreement.  See Houston E. & W.T. Ry. Co.
v. De Walt, 96 Tex. 121, 134, 70 S.W. 531, 537 (1902).





[6]  This doctrine
is also commonly referred to as the Aseverability
doctrine.@  See, e.g.,
ACE Capital Re Overseas Ltd. v Cent. United Life, 307 F.3d 24, 29 (2d Cir.
2002); Large v. Conseco Fin. Servicing Corp., 292 F.3d 49, 53 (1st Cir.
2002).  The terms appear to be
interchangeable, so we will follow the lead of the Fifth Circuit and use the
term Aseparability doctrine.@





[7]  The Fifth
Circuit and other circuit courts disagree as to the scope of the separability
doctrine.  See Will-Drill,
352 F.3d at 215 n.15.  Some courts
distinguish between void and voidable agreements in determining whether the
separability doctrine applies.  See
Sphere Drake Ins. Ltd. v. Clarendon Nat=l
Ins. Co., 263 F.3d 26, 32 (2d Cir.
2001); Sandvik AB v. Advent Int=l
Corp., 220 F.3d 99, 107 (3d Cir.
2000).  The Fifth Circuit has rejected
this distinction.  See Will-Drill,
352 F.3d at 215 n.15; Primerica Life Ins. Co. v. Brown, 304 F.3d 469,
472 n.2 (5th Cir. 2002).  The scope of
the separability doctrine is greater under the Fifth Circuit=s view, and therefore application of the other rule
would not affect our determination.





[8]  This
conclusion is also consistent with this court=s
analysis in Dewey v. Wegner, 138 S.W.3d 591, 597B602 (Tex. App.CHouston
[14th Dist.] 2004, no pet.). 





[9]  On appeal, AMT claims this case does not
involve the very existence of an agreement, but rather the Acontinued validity of an agreement
that already exists.@  See Will-Drill, 352 F.3d at 219.  It notes that it employed Miller as its vice
president for some period of time before he was discharged.  However, AMT does not argue that the
agreement was in effect for that period of time; AMT merely argues that Miller
was an at-will employee that whole time. 
And, at the hearing on AMT=s motion to compel, AMT refused to concede the existence of
a valid agreement.  This supports, not
contradicts, our holding that AMT is attacking the very existence of a
contract.





[10]  A notable
exception is Sandvik, in which the court was presented with the same
situation we are presented with hereCAa party
suing on a contract containing an arbitration clause resists arbitration, and
the defendant, who denies the existence of the contract, moves to compel it.@  220 F.3d at
100.  The Will-Drill court noted
that it was not adopting the void-voidable distinction used in Sandvik.  See 352 F.3d at 215 n.15.  However, the court did approve of the holding
in Sandvik.  See 352 F.3d
at 216 & n.28, 218 (AWe agree with those circuits which have included
claims that . . . the agent lacked authority to bind the principle in this
category [of cases in which the court must determine whether there is an
agreement to arbitrate].@).





[11]  AMT can seek referral to
arbitration later, if it so chooses, after it has proved there was a valid
agreement to arbitrate.  Until then,
however, it is AMT that cannot have it both ways.  See Sandvik, 220 F.3d at 108 (AIn short, Advent seeks not to sever
the arbitration clause but rather to make the acts of its agent simultaneously
binding and non-binding.@). 
It cannot accept the benefits of the employment agreement without
simultaneously accepting its detriments. 






[12]  Senior Justice
Jackson B. Smith, Jr. sitting by assignment.