In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



 NO. 09-05-249 CV


 NO. 09-05-301 CV


____________________



TIMOTHY SATRE, Appellant



V.



DEBORAH DOMMERT, Appellee



and



IN RE TIMOTHY SATRE






On Appeal from the 60th District Court


Jefferson County, Texas


Trial Cause No. B-172,804-A


and


Original Proceeding 






 OPINION 



 This mandamus proceeding and interlocutory appeal concern the applicability of
arbitration provisions. We dismiss the interlocutory appeal and determine the trial court
abused its discretion in denying the relator's motion to compel arbitration.

Background

 Over a period of approximately eighteen months, Deborah Dommert established five 
accounts with Raymond James & Associates, Inc., a member of the New York Stock
Exchange. Timothy Satre, a certified financial planner and authorized representative of
Raymond James Financial Services, opened the accounts for Dommert. Dommert and Satre
both signed all of the new account forms. Alleging that the management of her accounts
caused her to suffer financial losses, Deborah Dommert sued Raymond James Financial
Services, Inc. ("RJFS"), Timothy Satre, Raymond James & Associates, Inc. ("RJA"), and
Raymond James Financial, Inc., the parent corporation of RJFS and RJA. 

 Satre and each of the corporate defendants moved to compel arbitration of the entire
dispute based upon the arbitration clause in the Client Agreement. On May 19, 2005, the
trial court denied all of the defendants' motions to compel arbitration. Also, at the same
hearing, and at Dommert's request, the trial court severed Dommert's claims against Satre
from her claims against the corporate defendants, making Satre the sole defendant in Cause
No. B-172,804-A. 

 On May 31, 2005, Dommert filed an amended petition against Satre and omitted the
contention that Satre was an agent or employee of RJFS. On July 7, 2005, Satre timely filed
a petition for writ of mandamus asserting that the trial court abused its discretion in denying
his motion to compel arbitration. (1) 

 Mandamus relief is available to correct a clear abuse of discretion or the violation of
a legal duty when there is no adequate appellate remedy. In re J.D. Edwards World Solutions
Co., 87 S.W.3d 546, 549 (Tex. 2002)(compelling arbitration when arbitration agreement
applied to claims at issue and there were no defenses to enforcement of the agreement). 
Also, a trial court abuses its discretion if it erroneously applies the law to the facts, or if it
errs in determining the law. In re Bruce Terminix Co., 988 S.W.2d 702, 703 (Tex. 1998)
(orig. proceeding). Under the Federal Arbitration Act ("FAA"), "upon being satisfied that
the making of the agreement for arbitration or the failure to comply therewith is not in issue,
the court shall make an order directing the parties to proceed to arbitration in accordance with
the terms of the agreement." 9 U.S.C.A. § 4 (1999). Thus, the FAA directs a trial court to
refer the matter to arbitration if there is a valid agreement to arbitrate a dispute that falls
within the scope of the arbitration agreement. 

The Arbitration Clause


 Each of the five new account forms signed by Dommert stated that her accounts were
subject to a "binding arbitration clause and other provisions substantially affecting [her]
rights." Each of the new account forms incorporated by reference a document titled "Client
Agreement" that contained an arbitration clause. 

 The parties dispute the applicability of the arbitration clause because after Dommert
opened her initial account on May 11, 1998, she executed an agreement titled "Investment
Management Service Agreement" ("IMSA"). The IMSA purports to be the entire agreement
between Dommert and RJA. The IMSA does not contain an arbitration clause, and does not
refer to the Client Agreement. Dommert asserts that the IMSA governs her relationship with
Satre; while Satre, on the other hand, asserts the Client Agreement governs. 

 The Client Agreement, which was incorporated into the new account forms executed
by Dommert and Satre on each of Dommert's five accounts, provides:

Arbitration and Dispute Resolution: (a) In a dispute or
controversy, either arising in the future or in existence now,
between me and you (including your officers, directors,
employees or agents and the introducing broker, if applicable)
we agree to first endeavor to settle the dispute in an amicable
manner by mediation before the National Association of
Securities Dealers, Inc. at the request of either party. Thereafter,
any unsettled dispute or controversy will be resolved by
arbitration conducted before the New York Stock Exchange,
Inc., the National Association of Securities Dealers, Inc., or the
American Stock Exchange, Inc., or other self-regulatory
organizations (SRO) subject to the jurisdiction of the Securities
and Exchange Commission (SEC) pursuant to the arbitration
rules of the Exchange or SRO, and in accordance with the
United States Arbitration Act (Title 9 of the United States
Code).

 

Agreement to Arbitrate


 We must initially determine whether the parties to this appeal agreed to arbitrate their 
underlying dispute. Safer v. Nelson Fin. Group, Inc., 422 F.3d 289, 293 (5th Cir. 2005). A
party moving to arbitrate a dispute must prove that a valid agreement to arbitrate exists, and
that the dispute falls within the scope of the agreement. Will-Drill Res., Inc. v. Samson Res.
Co., 352 F.3d 211, 214 (5th Cir. 2003); J.M. Davidson, Inc. v. Webster, 128 S.W.3d 223, 227
(Tex. 2003). Thus, we examine the record to determine whether Satre met his burden under
the FAA to show the existence of a valid agreement.

 With respect to the agreements in question, the parties do not disagree that Dommert
signed the new account forms. However, the parties disagree that the Client Agreements
defined the relationship between Dommert and Satre, and disagree that Satre, individually,
benefitted from the arbitration agreement. Thus, the issues in this case are whether the
current agreement of the parties includes a valid arbitration agreement, and whether Satre,
who is not specifically named in the provisions of the various Client Agreements, is entitled
to enforce them. 

 We first examine the evidence regarding whether Dommert and Satre are bound by
the arbitration provisions in the Client Agreements. On May 11, 1998, after meeting with
Satre, Dommert established a financial relationship with RJA by opening two new accounts. 
One of these accounts was an individual account, and the other was an Individual Retirement
Account. On both of the new account forms signed by Dommert to open these accounts,
Dommert acknowledged: "I have received, read, understand, and agree to abide by all the
terms and conditions set forth in the Client Agreement incorporated herein by this reference. 
The Client Agreement contains a binding arbitration clause and other provisions substantially
affecting my rights. *** I have detached and retained the Client Agreement for my records.
***" 

 The Client Agreements applicable to all of the accounts also provided:

I/we acknowledge and agree that my/our relationship with
Raymond James & Associates, Inc. is governed by the
provisions of this agreement. Throughout this agreement, "I",
"me", "we" and "us" refer to the undersigned and any other
actual or beneficial owner of property in this account. "You"
and "your" refer to Raymond James & Associates, Inc. and the
introducing broker, if applicable.


Dommert argues that based on this language in the Client Agreements, Satre is not a party
to the Client Agreement. 

 By signing the new account form, Dommert acknowledged in writing her agreement
to abide by all of the terms of the Client Agreement. At the hearing on the motion to compel
arbitration, Dommert attempted to avoid the terms of the Client Agreement by introducing
her affidavit in which she swore that "I did not receive or sign a Client Agreement. I never
agreed to arbitrate my claims against the Defendants in this matter." The evidence at the
hearing also included Dommert's deposition testimony in which she testified, under oath, that
when she initially signed the new account forms she read all of their provisions, including
the provision that she received and retained the Client Agreement. Dommert further testified
that she was not tricked into signing the new account forms. 

 Dommert's argument that she did not receive or sign the Client Agreement itself is
without merit. An unsigned document containing an arbitration clause, such as the unsigned
client agreement in this case, may be incorporated by reference into another signed
document. Teal Const. Co. v. Darren Casey Interests, Inc., 46 S.W.3d 417, 420 (Tex. App. -
Austin 2001, pet. denied). Also, a party's failure to read a portion of a contract's provisions
is no defense to the enforcement of the contract's terms. In the case of In re McKinney, 167
S.W.3d 833, 835 (Tex. 2005) (orig. proceeding), the Texas Supreme Court confirmed that
"[a]bsent fraud, misrepresentation, or deceit, a party is bound by the terms of the contract he
signed, regardless of whether he read it or thought it had different terms." We hold that the
signed new account forms incorporated the unsigned arbitration provisions contained in the
Client Agreements. 

 Next, we examine the arbitration clause in the Client Agreement to determine whether
Satre was a party to it. Although not expressly named in the arbitration clause, the arbitration
clause expressly extends to RJA's agents. Therefore, we examine the record for the evidence
introduced at the hearing regarding whether Satre was an agent of RJA.

 At the time of the hearing on May 19, 2005, Dommert's live pleading consisted of her
Second Amended Petition, in which she asserted that Satre "did business as an authorized
representative of RJA [Raymond James & Associates, Inc.]." Assertions of fact, not pleaded
in the alternative, and contained in the live pleadings of a party to the suit are formal judicial
admissions. Holy Cross Church of God in Christ v. Wolf, 44 S.W.3d 562, 568 (Tex. 2001). 
 On May 31, 2005, Dommert subsequently amended her complaint after the Motion
to Compel Arbitration hearing and dropped her allegation that Dommert was RJA's agent. 
Dommert's amended complaint was filed more than seven days after the hearing on the
Motion to Compel Arbitration and after the trial court entered its order denying Satre's
Motion to Compel Arbitration. Because Dommert's Second Amended Petition constituted
the evidence considered by the trial judge at the time of the hearing on May 19, 2005, we
disagree with Dommert's contention that Satre presented no evidence that he was a party to
the arbitration agreement. Based on Dommert's admission in her pleadings, the evidence for
purposes of the hearing conclusively proved that Satre was RJA's agent. Horizon/CMS
Healthcare Corp. v. Auld, 34 S.W.3d 887, 905 (Tex. 2000); Mendoza v. Fidelity and Guar.
Ins. Underwriters, Inc., 606 S.W.2d 692, 694 (Tex. 1980). 

 In summary, the record shows that: (1) the terms of the Client Agreements were by
law incorporated by reference into the new account agreements' terms; (2) Dommert signed
the new account agreements and was notified that they incorporated an arbitration provision;
(3) Dommert's live pleading on file at the time of the hearing consisting of her Second
Amended Petition established that Satre was RJA's agent; and (4) the arbitration clause in
question extends to Satre as RJA's agent. Therefore, we find that Satre made a prima facie
case that Dommert and Satre initially entered into an arbitration agreement under the FAA. 
 But, resolving these issues does not resolve the matter entirely. The continued validity
of the arbitration clauses in the Client Agreements also depends upon whether the terms of
the Client Agreements were superseded by the terms contained in the Investment
Management Service Agreement ("IMSA"). Dommert argues that the IMSA agreement's
entireties clause operates to allow the IMSA to supersede all Client Agreements, whether
made before or after the date the IMSA was signed. On the other hand, Satre argues that he
was not expressly named as a party to the IMSA, and thus contends that he is entitled to
enforce the arbitration clause in the Client Agreement. 

 On the same date that Dommert opened the initial two accounts, and subsequent to
signing the two new account forms for those two accounts, Dommert executed the IMSA. 
The IMSA contains no arbitration clause, and contains a modification clause that states:

Modification.


This Agreement cannot be modified unless the modification is in
writing and is signed by your President, Treasurer, or Corporate
Counsel. I understand that this written document represents the
entire Agreement between you and me, and that any previous or
oral representations or promises, if not contained in this
Agreement, are of no effect.


 By executing the IMSA, Dommert appointed RJA as her attorney-in-fact, and gave it
discretion to make investments without her advance consent. In the top right hand corner, the
IMSA document references the account number established for the individual account that
Dommert opened on May 11, 1998. The IMSA does not expressly reference the account
numbers on Dommert's Individual Retirement Account or other accounts. 

 Whether one contract executed in a series of contracts is intended by the parties to
become the sole agreement presents a question under the merger doctrine. Generally, when
a written agreement is fully integrated, the parol evidence rule precludes the enforcement of
inconsistent prior or contemporaneous agreements. Hubacek v. Ennis State Bank, 159 Tex.
166, 317 S.W.2d 30, 31 (1958). "Merger, with respect to the law of contracts, refers to the
extinguishment of one contract by its absorption into another contract and is largely a matter
of the intention of the parties." Smith v. Smith, 794 S.W.2d 823, 827-828 (Tex. App. - Dallas,
1990, no writ). "An integration clause is in essence the merger doctrine memorialized." Id.
at 828. 

 The IMSA expressly provides that it is "between Investment Advisory Services
(hereinafter referred to as 'IAS'), a Division of Raymond James & Associates, Inc. and
Deborah A. Dommert (hereinafter referred to as 'Client'), who has appointed IAS to perform
the investment services described below in accordance with the terms and conditions of this
Agreement." Unlike the Client Agreement, there is no language extending the terms of the
IMSA to RJA's agents. 

 Dommert expressly states in her brief that Satre is not a party to the IMSA. Satre also
states in his brief that he is not a party to the IMSA. Finally, the testimony before the court
on whether Satre was a party to the IMSA consisted of the deposition testimony of Paul
Matecki, the Senior Vice President of Raymond James Financial, Inc., which is the parent
corporation of RJA. Matecki testified that Satre was not a party to the IMSA. 

 On this record, the documents and testimony are consistent and are not contradicted. 
We therefore accept as a fact that Satre was not a party to the IMSA. Tex. R. App. P. 38.1(f). 
Also, under the facts before the trial court, the evidence was conclusive that Satre was a party
to the Client Agreements, but was not a party to the IMSA. 

 Before the merger doctrine applies to a contract, the later contract must be between the
same parties. Kona Technology Corp. v. Southern Pacific Transp. Co., 225 F.3d 595, 612
(5th Cir. 2000); Fish v. Tandy Corp., 948 S.W.2d 886, 898-99 (Tex. App. - Fort Worth 1997,
writ denied)(agreements between different parties cannot merge). Here, the parties are not
identical because Satre is not a party to the IMSA. As a result, the merger doctrine does not
apply with respect to Satre's contractual rights because Satre was not a party to both contracts
at issue. We hold that Satre met his burden of showing a valid arbitration agreement existed
with Dommert.

 Although Dommert does not argue that the arbitration clauses in the Client Agreements
do not reach the complaints she makes in her suit against Satre, Satre also bore the burden of
showing that Dommert's claims fall within the scope of the arbitration agreement. Cantella
& Co., Inc. v. Goodwin, 924 S.W.2d 943, 944 (Tex. 1996). Dommert's complaints against
Satre relate to Satre's representations of his skill as a money manager, his promise to
personally and professionally manage her assets, his recommendation to her of an outside
manager in which she placed a large percentage of her assets, his alleged failure to adequately
disclose his financial arrangement with this outside manager, his subsequent alleged failure
to manage Dommert's assets "in the face of the worst stock market in recent history," and his
execution of trades in her account in disregard of her instructions not to sell certain of her
stock holdings. Dommert's legal theories included claims against Satre for breach of
fiduciary duties, breach of contract, fraud, misapplication of fiduciary property, accounting,
violations of the Texas Deceptive Trade Practices Act, and commercial bribery.

 It is clear that the Client Agreement contemplated the purchase and sale of securities. 
The arbitration clause indicates that it applies to "any unsettled dispute or controversy."

 All of Dommert's claims against Satre concern Satre's representations in convincing
her to hire him as her investment adviser and his subsequent actions in managing her
accounts. The Fifth Circuit held that a similar arbitration clause was sufficiently broad to
require the arbitration of several investors claims against their financial advisers for: (1)
inappropriate investments; (2) misrepresentation; (3) breach of fiduciary duty; (4) violation
of federal securities law; and (5) negligence. Safer, 422 F.3d 289 at 293. The Texas Supreme
Court has likewise enforced broad arbitration clauses to require arbitration for the types of
claims that are alleged against Satre. See In re McKinney, 167 S.W.3d at 834 (alleging claims
for breach of contract, fraud, breach of fiduciary duty, and other claims for mishandling and
loss of investments in his account); In re Firstmerit Bank, N.A., 52 S.W.3d 749, 753 (Tex.
2001)(alleging claims for breach of contract, revocation of acceptance, breach of warranty,
negligence, fraud, violations of the Deceptive Trade Practices Act, Fair Debt Collection
Practices Act, Equal Credit Opportunity Act and Fair Credit Reporting Act, and injunctive
relief); and Cantella, 924 S.W.2d at 944 (alleging claims for fraud, Texas Securities Act
violations, negligence and gross negligence). We likewise hold that the claims asserted by
Dommert fall within the scope of the Client Agreements' arbitration clauses.

Conclusion

 Both Satre and Dommert signed a contract incorporating an arbitration clause by
reference. The arbitration provision was not superseded by subsequent agreements.
Accordingly, we hold the trial court abused its discretion in denying Satre's motion to compel
arbitration. We conditionally grant the writ of mandamus and order the trial court to vacate
its order denying Satre's motion to compel arbitration, and to enter a new order compelling
arbitration of all of Dommert's claims against Satre. We are confident the trial court will
comply, and our writ will issue only if it does not. We further dismiss Satre's interlocutory
appeal.

 DISMISSED IN PART; WRIT CONDITIONALLY GRANTED.




 PER CURIAM



Submitted on November 17, 2005

Opinion Delivered January 26, 2006

Before Gaultney, Kreger and Horton, JJ.
1. Satre also timely filed his notice of appeal from the trial court's order denying his motion
to compel arbitration. The arbitration clause at issue expressly provides for arbitration in accordance
with the United States Arbitration Act, and Dommert stipulated in her response to the petition for
writ of mandamus that the federal Act applied. The investment advice that is the subject of this
dispute involved the sale of securities; and, agreements that involve the sale of securities affect
interstate commerce. In re Whitfield, 115 S.W.3d 753, 757 (Tex. App. - Beaumont 2003, orig.
proceeding); Eurocapital Group, Ltd. v. Goldman Sachs & Co., 17 S.W.3d 426, 430 (Tex. App. -
Houston [1st Dist.] 2000, no pet.); Thomas James Assocs., Inc. v. Owens, 1 S.W.3d 315, 319 (Tex.
App. - Dallas 1999, no pet.). Accordingly, because we agree the federal Act applies, we dismiss
Satre's interlocutory appeal as immaterial and consider his petition for mandamus. See In re Nexion
Health at Humble, Inc., 173 S.W.3d 67, 69-70 (Tex. 2005)(holding that because the arbitration
agreement was governed by the federal Act and mandamus is available, appellant's interlocutory
appeal under the state Act was "immaterial.").