NUMBER 13-07-693-CV
 


COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


_______________________________________________________


IN RE: INTERNATIONAL BANK OF 


COMMERCE D/B/A IBC AND DAVID GUERRA, 

NELSON MUNOZ, AND ADRIAN VILLARREAL

_______________________________________________________


On Petition for Writ of Mandamus

_______________________________________________________ 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Garza and Vela


Memorandum Opinion by Justice Garza



 This mandamus proceeding arises from the trial court's refusal to compel arbitration
of the underlying action. Real Parties in Interest, Mar-Rox, Inc., Mark A. Cantu, Roxanne
Peña Cantu, Law Offices of Mark Cantu, and Mark Cantu as custodian for Ayssa Celeste
Cantu and Krystha Yanni Cantu (collectively "the Cantus") brought suit against International
Bank of Commerce d/b/a IBC, David Guerra, Nelson Munoz, and Adrian Villarreal
(collectively "IBC"), seeking to prevent foreclosure on several properties pledged as
collateral by the Cantus and asserting claims for damages. IBC now seeks a writ of
mandamus to compel the respondent, the Honorable Noe Gonzalez, (1) to vacate his order
denying IBC's motion to compel arbitration. For the following reasons, we conditionally
grant the writ.

I. Background

 Since 1992, the Cantus have sought and obtained loans from IBC for various
amounts. The Cantus have executed approximately fifty notes, deeds of trust, security
agreements, and other documents (collectively the "loan documents") pursuant to which
the Cantus pledged real property and accounts receivable as collateral. On June 11, 2007,
various Hidalgo County taxing authorities notified IBC that tracts of real property, pledged
as collateral by the Cantus for the various loans, were posted for sale at a public auction
as a result of the Cantus failure to pay taxes. The public auction was scheduled for July
3, 2007. 

 On becoming aware of the taxing entities' intent to foreclose on the properties, IBC
notified the Cantus that the failure to pay taxes and assessments on the subject real
property constituted defaults under the terms of the notes and the deeds of trust. After the
Cantus failed to cure these defaults, IBC accelerated the maturity of the indebtedness. IBC
then instructed the trustee under the deeds of trust to post the real property for non-judicial
foreclosure.

 On July 2, 2007, the Cantus filed the underlying lawsuit against IBC. The Cantus
alleged that on June 21, 2007, Mark Cantu entered into an oral agreement with IBC
whereby the Cantus agreed to pay the taxes due on the real property in exchange for IBC's
agreement to forgo accelerating the maturity of the indebtedness and to forgo foreclosure
proceedings on the subject real properties. The Cantus alleged that IBC breached this
agreement by presenting a forbearance agreement for the Cantus' signature that included
unconscionable and oppressive terms. Additionally, the Cantus alleged fraud arising from
the same oral contract. Finally, the Cantus sought injunctive relief, asking the court to
enjoin IBC from foreclosing on the properties. That same day, the Cantus obtained a
temporary restraining order halting the foreclosure. Before IBC answered, the Cantus
amended their petition to include claims for breach of fiduciary duty, unjust enrichment
based on IBC's allegedly charging excessive account-analysis fees, DTPA violations,
duress, tortious interference with a business opportunity, slander of title, and libel.

 One week later, IBC filed a Motion to Compel Arbitration and Stay Proceedings
under the Federal Arbitration Act ("FAA") (2) or, alternatively, under the Texas Arbitration Act
("TAA"). (3) IBC cited standard arbitration language in all of the loan documents similar to the
following:


 Any and all controversies between the Parties, except such claims
and controversies which are consumer related and involve an
aggregate amount in controversy of less than ten thousand dollars
($10,000.00), shall be resolved by arbitration in accordance with the
Commercial Arbitration Rules of the American Arbitration Association
in effect at the time of filing, unless the Commercial Arbitration Rules
conflict with this provision, and in such event, the terms of this
provision shall control to the extent of the conflict.


 


 Arbitrable disputes include any and all controversies or claims
between the Parties of whatever type or manner, including without
limitation, any claim arising out of or relating to this agreement, all
past, present and/or future credit facilities and/or agreements
involving the Parties, any transactions between or involving the
Parties and/or any aspect of any past or present relationship of the
Parties, whether banking or otherwise, specifically including any
alleged tort committed by any party.

 For purposes of this provision, "the Parties" means Lender [IBC] and
Borrower [the Cantus], and each and all persons and entities signing
this agreement or any other agreements between or among any of the
Parties as part of this transaction. "The Parties" shall also include
individual partners, affiliates, officers, directors, employees, agents
and/or representatives of any party to such documents, and shall
include any other owner and holder of this agreement.


 


 The Parties agree that any action regarding any controversy between
the Parties shall either be brought by arbitration, as described herein,
or by judicial proceedings, but shall not be pursued simultaneously in
different or alternative forms. A timely written notice of intent to
arbitrate pursuant to this agreement stays and/or abates any and all
action in a trial court, save and except a hearing on a motion to
compel arbitration and/or the entry of an order compelling arbitration
and staying and/or abating the litigation pending the filing of the final
award of the arbitrators. All reasonable and necessary attorney's fees
and all travel costs shall be awarded to the prevailing party within ten
(10) days of the signing of the order compelling arbitration.


 


 Any aggrieved party shall serve a written notice of intent to arbitrate
to any and all opposing Parties within 360 days after dispute has
arisen. A dispute is defined to have arisen only upon receipt of
service of judicial process, including service of a counterclaim[.]
[F]ailure to serve a written notice of intent to arbitrate within the time
specified above shall be deemed a waiver of the aggrieved party's
right to compel arbitration of such claim. The issue of waiver pursuant
to this agreement is an arbitrable dispute.


 


 Active participation in pending litigation during the 360 day notice
period, whether as plaintiff or defendant, is not a waiver of the right to
compel arbitration. All discovery obtained in the pending litigation
may be used in any subsequent arbitration proceeding.


 


 The Parties acknowledge that this agreement evidences a transaction
involving interstate commerce in that the funds which may be
advanced or committed under this agreement are derived from
interstate and/or international financial markets. The Federal
Arbitration Act shall govern the interpretation, enforcement, and
proceedings pursuant to the arbitration clause of this agreement.


 

IBC argued that all the claims alleged fell within the scope of the agreements and asked
the trial court to stay the proceedings and compel arbitration. 

 The Cantus responded by filing another amended petition. In their second amended
petition, the Cantus alleged that IBC had fraudulently induced the agreements to arbitrate
in the loan documents. Specifically, the Cantus alleged that prior to signing any of the
notes and deeds of trust, Mark Cantu told his IBC loan officer that neither he nor his wife
would sign any note or renewal or extension of the notes that contained an arbitration
clause. The Cantus alleged that their loan officers represented that such clauses would
be removed from the documents and that the Cantus relied on these representations to
their detriment. The Cantus then responded to the motion to compel arbitration, alleging
fraud in the inducement of the arbitration clauses and alleging that the arbitration clause
improperly deprived them of their right to trial by jury. 

 On July 12, 2007, the parties appeared for a hearing on the Cantus' request for a
temporary injunction. The Cantus argued that they needed to conduct discovery on the
arbitration issues. After a discussion off the record, the trial court set a hearing on the
motion to compel arbitration for August 8, 2007. The parties then agreed on the record to
conduct discovery limited to the issues involved in the motion to compel arbitration. 

 On July 13, 2007, the Cantus filed a motion to shorten the discovery response
period so that discovery would be due within ten days after service. Thereafter, on July 16,
2007, the Cantus served their First Set of Requests for Admissions on IBC's counsel. The
parties then appeared in the trial court for a hearing on the Cantus' request to shorten the
discovery response time. IBC was represented at the hearing by Edmundo Ramirez. The
respondent was not physically present; however, the hearing was held with respondent
participating by phone. The parties agreed by phone that IBC's responses would be due
on July 30, 2007. No court reporter was present to record the agreement, and no written
order was ever submitted to or signed by the trial court regarding the shortened discovery
response period. 

 Apparently, there was a miscommunication between Ramirez and IBC's other
attorney, Diann Bartek, who was responsible for answering the discovery. When Ramirez
transmitted the discovery requests to Bartek's office, Ramirez did not advise Bartek of the
agreed response date. Accordingly, she did not respond to the discovery on July 30, 2007,
as agreed.

 On August 8, 2007, the parties appeared for the hearing on IBC's motion to compel
arbitration. That same day, the Cantus filed a brief opposing arbitration, asserting that
IBC's failure to timely answer their requests for admissions required that the answers be
deemed in the Cantus' favor. The requests for admissions were filed with the trial court
at the hearing on the motion to compel. In the requests, IBC was asked to admit that (1)
Mark Cantu advised IBC he would not sign any documents containing an arbitration clause,
(2) thereafter IBC presented Mark and Roxanne Cantu with documents to sign containing
arbitration clauses, and (3) that neither Mark nor Roxanne Cantu read the documents
before signing them. 

 The parties argued extensively over whether the deemed admissions could be
considered at the hearing on the motion to compel arbitration. The trial court noted that
IBC's counsel had not yet moved to withdraw the admissions. As a result, the trial court
indicated its intention to continue the hearing and to address the deemed admissions after
IBC had an opportunity to brief the issue.

 The hearing proceeded, and Mark Cantu testified to the same facts covered by the
request for admissions. Mark Cantu testified that prior to signing any loan documents, he
told his loan officer he would not sign any document containing an arbitration clause and
that thereafter, and on many later occasions, his loan officer presented documents for his
signature that included an arbitration clause. Mark Cantu testified that he did not read the
documents prior to signing and that he relied on his loan officer's representation that
arbitration provisions would not be included in the loan documents.

 In addition to the fraud allegations, the Cantus argued in their brief and at the
hearing that IBC had waived its right to compel arbitration. The Cantus presented
evidence at the hearing on the motion to compel that on July 26, 2007, IBC had filed a
petition in intervention in a case styled Gonzalez v. Entex Gas Marketing Co., No.
2005CVQ000954-D2, pending in the 111th District Court of Webb County, Texas (the
"Entex case"). IBC's petition in intervention alleged that attorney's fees deposited in the
registry of the court constituted Mark Cantu's and the Law Offices of Mark Cantu's
accounts receivable, in which IBC had a security interest. The petition in intervention
states that its purpose was to give notice of IBC's first priority lien on the accounts
receivable and, alternatively, sought declaratory relief. The declaratory relief was sought
"subject to and without waiver of [IBC's] rights to compel arbitration should a dispute, as
defined in the Loan Documents, result from this filing." Additionally, the Cantus presented
evidence that IBC answered an interpleader in a case styled Estate of John R. Howie,
Deceased, No. 03-00005-P(B), that was previously pending in the Probate Court of Dallas
County, Texas (the "Howie case"). 

 IBC argued that its actions did not constitute a waiver. Specifically, IBC argued,
among other things, that at the time of IBC's conduct in the extraneous proceedings, the
Cantus had not disputed IBC's rights with respect to Mark Cantu's and the Law Offices of
Mark Cantu's accounts receivables. Mark Cantu testified at the August 8 hearing that
when IBC initially intervened in the Entex case, there was not a dispute as to IBC's rights
to the accounts receivable. Additionally, Mark Cantu testified that when the funds were
distributed in the Howie case, there was no dispute about the monies the Cantus owed to
IBC. 

 Furthermore, IBC pointed to the "self-help" provisions in the arbitration clauses:

 The parties shall have the right to invoke self-help remedies (such as set-off,
notification of account debtors, seizure and/or foreclosure of collateral, and
non-judicial sale of personal property and real property collateral) before,
during and after any arbitration and/or request ancillary or provisional judicial
remedies (such as garnishment, attachment, specific performance, receiver,
injunction or restraining order, and sequestration) before or after any
arbitration. The parties need not await the outcome of the arbitration before
using self-help remedies. Use of self-help or ancillary and/or provisional
judicial remedies shall not operate as a waiver of either party's right to
compel arbitration.


After the hearing, the trial court took the matter under advisement.

 On August 20, 2007, IBC formally moved to withdraw the deemed admissions
resulting from its failure to timely answer the Cantus' requests for admissions. The parties
also submitted additional briefing on the issues relating to the motion to compel arbitration. 

 On September 17, 2007, the Cantus filed their third amended petition. In this
petition, the Cantus added allegations that, for the first time, sought to invalidate IBC's
security agreements, claiming that the descriptions of the collateral in the security
agreements were insufficient. Additionally, the Cantus added allegations relating to
disputed attorney's fees in a case a styled Juan Manuel Sanchez et. al v. General Motors
et al, No. 406-06-H pending in the 389th District Court, Hidalgo County, Texas (the
"Sanchez case"). The Cantus alleged that the Law Offices of Mark Cantu represented the
plaintiff in the Sanchez case and that pursuant to a settlement of the claims in that action,
Michael Cowen and The Ammons Law Firm received attorney's fees due to the Cantus. 
The Cantus alleged that IBC had contacted the defendants in the Sanchez case "in an
effort to enforce what it claims is a lien on Mark Cantu's share of attorney's fees, thus
interfering with [that] business relationship." The Cantus further alleged that Cowen and
The Ammons Law Firm were refusing to pay the money to the Cantus due to IBC's lien and
had become unjustly enriched. The Cantus sought injunctive relief to prevent IBC from
"proceeding with efforts to enforce what it perceives to be a valid lien on funds which are
Cantus' share of attorney's fees in the cases cited and other pending cases." 

 The trial court entered a temporary restraining order on September 19, 2007,
ordering Cowen and The Ammons Law Firm to deposit the disputed funds into the registry
of the court, and it set a hearing for September 26, 2007 on the Cantus' application for a
temporary injunction. In their supplemental briefing regarding the arbitration issues, the
Cantus cited IBC's threatened intervention in the Sanchez case as evidence of IBC's
waiver of the right to compel arbitration.

 The Cantus then filed several more petitions, raising additional challenges to IBC's
security interests and seeking injunctive relief. On October 31, 2007, the parties again
appeared before the trial court. In addition to presenting arguments relating to the validity
of the security agreements, the Cantus argued that IBC's conduct in two additional
proceedings caused a waiver of IBC's right to compel arbitration. Specifically, the Cantus
pointed to two interpleader actions: (1) Abrego v. Brownsville Public Utilities Board, et al,
No. 2004-01-280-A, pending in the 107th District Court of Cameron County, Texas (the
"Abrego case"), and (2) Hampel v. Scott, No. 05-5971-A, pending in the 28th District Court
of Nueces County, Texas (the "Hampel case"). IBC answered the Abrego interpleader
action on October 18, 2007, but it stated that the answer was being filed "[s]ubject to and
without waiver of its rights to compel arbitration against Mark A. Cantu." In the Hampel
case, IBC had not yet answered the suit but had agreed to an order that required Hampel,
the interpleader plaintiff, to deposit the disputed funds into the registry of the court.

 On November 2, 2007, the trial court signed an order denying IBC's motion to
compel arbitration, expressly finding that "the Defendants have waived the right to invoke
arbitration." In the same order, the trial court granted the Cantus' application for a
temporary injunction to prevent IBC from foreclosing pursuant to six security agreements,
finding that the description of the collateral in those security agreements was insufficient
as a matter of law. The order stated that the terms and conditions of the order were stayed
pending the completion of this mandamus proceeding, which immediately followed. II. Mandamus is the appropriate remedy

 Initially, we must determine whether mandamus is the appropriate remedy. The
Cantus argue that this Court lacks jurisdiction to issue a writ of mandamus because IBC
did not present any evidence below that the transactions at issue affected interstate
commerce. IBC counters that the arbitration agreements provided that the FAA governed
the transactions and that any arbitration would be pursuant to the FAA. Therefore, IBC
claims it was not required to present evidence that the transactions affected interstate
commerce.

 A writ of mandamus is available when a Texas district court erroneously refuses to
compel arbitration under the FAA. Jack B. Anglin Co. v. Tipps, 842 S.W.2d 266, 272 (Tex.
1992). A writ of mandamus issues only to correct a clear abuse of discretion or the
violation of a duty imposed by law when there is no adequate remedy by appeal. In re
Daisy Mfg. Co., 17 S.W.3d 654, 658 (Tex. 2000) (orig. proceeding) (per curiam). The FAA
may govern a written arbitration clause enforced in Texas state court if the parties have
expressly contracted for the FAA's application. Volt Info. Sci. v. Bd. of Trs., 489 U.S. 468,
479 (1989); In re AdvancePCS Health, L.P., 172 S.W.3d 603, 605-06 & n.3 (Tex. 2005)
(orig. proceeding) (per curiam). When parties have designated the FAA to govern their
arbitration agreement, their designation should be upheld. See In re AdvancePCS Health,
L.P., 172 S.W.2d at 606 & n.3; see also In re SSP Partners, No. 13-07-031-CV, 2007 Tex.
App. LEXIS 6536, at **5-6 (Tex. App.-Corpus Christi Aug. 14, 2007, orig. proceeding)
(mem. op). Along with our sister courts of appeals, we have held that when the parties
agree to arbitrate under the FAA, they need not demonstrate that the transaction affects
interstate commerce in order to compel arbitration under the FAA. See In re Jim Walter
Homes, Inc., 207 S.W.3d 888, 896 (Tex. App.-Houston [14th Dist.] 2006, orig.
proceeding); In re People's Choice Home Loan, Inc., 225 S.W.3d 35, 40 (Tex. App.-El
Paso 2005, orig. proceeding); In re Kellogg Brown & Root, 80 S.W.3d 611, 617 (Tex.
App.-Houston [1st Dist.] 2002, orig. proceeding) ("[W]hen, as here, the parties agree to
arbitrate under the FAA, they are not required to establish that the transaction at issue
involves or affects interstate commerce."); see also Honrubia Props., Ltd. v. Gilliland, No.
13-07-210-CV, No. 13-07-249-CV, 2007 Tex. App. LEXIS 8085, at **4-5 (Tex.
App.-Corpus Christi Oct. 11, 2007, orig. proceeding) (mem. op.); Teel v. Beldon Roofing
& Remodeling, No. 04-06-00231-CV, 2007 Tex. App. LEXIS 3721, at **4-5 (Tex. App.-San
Antonio Apr. 25, 2007, orig. proceeding).

 The Cantus refer us to two cases where this Court held that the FAA did not apply
because the party seeking to compel arbitration did not present evidence that the
transaction affected interstate commerce. In those cases, however, the arbitration
agreement did not expressly invoke the FAA. See Cappadona Elec. Mgm't v. Cameron
County, 180 S.W.3d 364, 369 (Tex. App.-Corpus Christi 2005, orig. proceding); In re
MONY Secs. Corp. v. Durham, 83 S.W.3d 279, 282 (Tex. App.-Corpus Christi 2002, orig.
proceeding) ("The arbitration agreement in the present case does not specifically invoke
either the FAA or the Texas Arbitration Act, and the trial court made no finding as to which
act applies."). That is not the case here. The record shows that the arbitration agreements
expressly provided for application of the FAA. (4) Finding no reason to disregard the
substantial precedent discussed above, we hold that the FAA applies, and mandamus is
the appropriate remedy.

III. Procedure for enforcing arbitration agreements

 Texas procedure governs the enforcement of arbitration agreements under the FAA
in a Texas court. Jack B. Anglin Co., 842 S.W.2d at 268. A party seeking to compel
arbitration must first file a motion to compel arbitration demonstrating (1) a valid agreement
to arbitrate between the parties, and (2) the dispute is within the scope of the arbitration
agreement. In re FirstMerit Bank, N.A., 52 S.W.3d 749, 753-54 (Tex. 2001) (orig.
proceeding). The trial court's determination of the validity of an arbitration agreement is
a legal question reviewed de novo. Id. As to the second element, however, because
federal policy favors arbitration, a presumption exists favoring agreements to arbitrate
under the FAA. Id. Therefore, courts must resolve any doubts about an arbitration
agreement's scope in favor of arbitration. Id. Trial courts are instructed not to deny
arbitration "unless it can be said with positive assurance that an arbitration clause is not
susceptible of an interpretation which would cover the dispute." In re Dillard Dep't Stores,
Inc., 186 S.W.3d 514, 516 (Tex. 2006) (orig. proceeding) (per curiam). 

 Once the party seeking to compel arbitration demonstrates an agreement to
arbitrate that governs the claims at issue, the burden shifts to the party opposing arbitration
to establish a defense to arbitration. In re RLS Legal Solutions, LLC, 221 S.W.3d 629, 630
(Tex. 2007) (orig. proceeding) (per curiam); In re Jebbia, 26 S.W.3d 753, 756 (Tex.
App.-Houston [14th Dist.] 2000, orig. proceeding). If the non-movant fails to present a
valid defense to arbitration, the trial court has no discretion to deny arbitration. See In re
Oakwood Mobile Homes, Inc., 987 S.W.2d 571, 573 (Tex. 1999) (orig. proceeding) (per
curiam); Cantella & Co., Inc. v. Goodwin, 924 S.W.2d 943, 944 (Tex. 1996) (orig.
proceeding) (per curiam). 

VI. Waiver

 The Respondent refused to enforce the arbitration clauses, expressly finding that
IBC waived its right to compel arbitration. The Cantus argue that IBC's participation in
other lawsuits involving the loan documents at issue waived IBC's right to arbitration. We
disagree.

A. The law governing waiver

 Whether a party has waived its right to arbitration under the FAA is a question of
law, which we review de novo. See In re Bruce Terminix Co., 988 S.W.2d 702, 703-04
(Tex. 1998) (orig. proceeding) (per curiam); Southwind Group, Inc. v. Landwehr, 188
S.W.3d 730, 735 (Tex. App.-Eastland 2006, orig. proceeding). There is a strong
presumption against waiver. In re Bank One, N.A., 216 S.W.3d 825, 827 (Tex. 2007) (orig.
proceeding) (per curiam); In re D. Wilson Constr. Co., 196 S.W.3d 774, 783 (Tex. 2006)
(orig. proceeding). Thus, the party asserting waiver bears a heavy burden. In re Bruce
Terminix Co., 988 S.W.2d at 704-05; Southwind Group, Inc., 188 S.W.3d at 735.

 Waiver must be intentional. In re Bank One, N.A., 216 S.W.3d at 827. To
demonstrate waiver, the party opposing arbitration bears a heavy burden to show that (1)
the movant substantially invoked the judicial process, and (2) the party opposing arbitration
suffered prejudice thereby. In re Bruce Terminix Co., 988 S.W.2d at 704; EZ Pawn v.
Mancias, 934 S.W.2d 87, 89 (Tex. 1996) (orig. proceeding) (per curiam). 

 "A party does not waive arbitration merely by delay; instead, the party urging waiver
must establish that any delay resulted in prejudice." Southwind Group, Inc., 188 S.W.3d
at 735. Courts analyzing whether the party opposing arbitration has suffered prejudice
typically focus on two inquiries: (1) whether the movant obtained access to information not
discoverable in arbitration, and (2) whether the party opposing arbitration incurred costs
and fees due to the movant's actions or delay. Id. at 737. If the party opposing arbitration
argues that it has incurred costs and fees, it must present evidence of those expenses and
explain why those expenses would not have been incurred in arbitration. Id.

B. Application

 At the outset, we must note that the Cantus do not contend that IBC's conduct in the
trial court below waived its right to arbitration--nor could they. The Cantus sued IBC, who
immediately answered and moved to compel arbitration. IBC has continuously and
repeatedly sought arbitration despite the substantial activity in the case below by the
Cantus. IBC has not acted inconsistently with its right to compel arbitration in the litigation
below. 

 Rather than pointing to actions taken in the instant case, the Cantus point to actions
taken in cases pending in other trial courts wherein IBC has either (1) intervened to
preserve its rights to attorney's fees due and owing to Mark Cantu and the Law Offices of
Mark Cantu pursuant to security agreements in which Cantu pledged his accounts
receivable, or (2) responded to interpleader actions in which such fees were deposited into
the registry of the trial court. The Cantus allege that IBC substantially invoked the judicial
process in these other cases, resulting in a waiver of IBC's right to arbitrate the dispute
now under review. 

 The Cantus do not dispute that they were required to demonstrate prejudice in order
to obtain a finding of waiver. In support of their prejudice argument, they claim that IBC's
actions forced them to litigate the validity of IBC's liens in multiple venues, including
seeking a temporary injunction in the present case to prevent IBC from foreclosing on the
collateral. Additionally, they claim that IBC was paid "huge sums of money" in the Howie
case and that money belonging to the Cantus has been "tied up" in the other cases.

 1. Substantial invocation by intervention in the Entex case


 The Cantus argue that in the Entex case, IBC intervened to collect attorney's fees
owed to Mark Cantu and the Law Offices of Mark Cantu. IBC's petition in intervention
alleged that attorney's fees deposited in the registry of the court constituted Mark Cantu's
and the Law Offices of Mark Cantu's accounts receivable, in which IBC had a security
interest. The petition in intervention states that its purpose is to give notice of IBC's first
priority lien on the accounts receivable and, alternatively, seeks declaratory relief. The
declaratory relief is sought "subject to and without waiver of [IBC's] rights to compel
arbitration should a dispute, as defined in the Loan Documents, result from this filing." 
IBC's petition in intervention was filed on July 26, 2007, after the underlying lawsuit was
filed and before the Cantus filed their third amended petition which, for the first time,
asserted that IBC's liens were invalid. 

 The FAA's purpose is to ensure enforcement of privately made agreements to
arbitrate, not merely to promote the expeditious resolution of claims. Dean Witter
Reynolds, Inc. v. Byrd, 470 U.S. 213, 219 (1985); In re Greenpoint Credit, L.L.C., No. 04-04-00794-CV, 2004 Tex. App. LEXIS 11594, at *6 (Tex. App.-San Antonio Dec. 29, 2004,
orig. proceeding) (mem. op.). In this case, the contracts explicitly spelled out the conduct
that would not constitute a waiver of the right to arbitrate:

 Any aggrieved party shall serve a written notice of intent to arbitrate to any
and all opposing Parties within 360 days after dispute has arisen. . . .
[F]ailure to serve a written notice of intent to arbitrate within the time
specified above shall be deemed a waiver of the aggrieved party's right to
compel arbitration of such claim. 


 . . . 


 Active participation in pending litigation during the 360 day notice period,
whether as plaintiff or defendant, is not a waiver of the right to compel
arbitration. All discovery obtained in the pending litigation may be used in
any subsequent arbitration proceeding.


In addition, a dispute was defined "to have arisen only upon receipt of service of judicial
process, including service of a counterclaim." 

 We are required to enforce arbitration contracts as written, even with regard to acts
that are alleged to have waived the right to arbitrate. See In re Oakwood Homes, 987
S.W.2d at 574 (looking to terms of the contract to determine if failure to initiate arbitration
constituted a waiver); In re Centex Home Equity Co., LLC, No. 04-04-00585-CV, 2004 Tex.
App. LEXIS 11476, at *13 (Tex. App. -San Antonio Dec. 22, 2004, orig. proceeding) (mem.
op) (holding that creditor did waive arbitration by delay, relying on arbitration clause's
definition of "dispute" to hold that neither prior foreclosure action by creditor nor did
debtors' action to set aside foreclosure implicated arbitration clause). 

 It is undisputed that IBC intervened in the Entex case on July 26, 2007. Mark Cantu
testified that prior to IBC's intervention in the Entex case, there had not been a dispute as
to IBC's rights in the funds involved therein. In fact, the Cantus did not formally attack
IBC's liens in the underlying lawsuit until much later, on September 17, 2007, when they
filed their third amended petition in this case. Even if we assume that the Cantus original
petition in this case on July 2, 2007 started a "dispute" as to IBC's right to the account
receivable in the Entex case, a year has not passed since the Cantus initiated this lawsuit. 
Under the terms of the agreements, therefore, IBC could not have waived its right to
compel arbitration by participating, at least initially, in the Entex case. By the agreements'
terms, IBC was within its rights to participate in the Entex case during the 360-day notice
period without causing a waiver of the right to arbitrate. See In re Oakwood Homes, 987
S.W.2d at 574; In re Centex Home Equity Co., LLC, 2004 Tex. App. LEXIS 11476, at *13. 

 Alternatively, the parties have not cited, nor have we located, a case expressly
discussing waiver when a movant for arbitration has intervened in an entirely separate
action. Several courts have held, however, that a party does not necessarily waive its
contractual right to arbitration of a particular dispute by participating in other litigation
related to the same contract. See Valero Energy Corp. v. Teco Pipeline Co., 2 S.W.3d
576, 594 (Tex. App.-Houston [14th Dist.] 1999, no pet.) (citing Lawrence v.
Comprehensive Bus. Servs. Co., 833 F.2d 1159, 1165 (5th Cir. 1987); Transwestern
Pipeline Co. v. Horizon Oil & Gas Co., 809 S.W.2d 589, 593 (Tex. App.-Dallas 1992, writ
dism'd w.o.j.)). "It has long been the law in this state that even though a party may have
once waived a contract right in the past, it may enforce that right in the future by giving
notice of its intention to do so." Id. 

 This Court has recognized that actions taken in other litigation are generally not
considered evidence of waiver of the right to arbitrate, and we have only looked to conduct
in other proceedings when that conduct appeared to be part of the litigation strategy in the
underlying matter that would be inconsistent with the right to arbitrate. See In re Christus
Spohn Health Sys. Corp., 231 S.W.3d 475, 481 (Tex. App.-Corpus Christi 2007, orig.
proceeding). For example, in In re Christus Spohn Health System, the relators appeared
in a related criminal action and sought a contempt order against the real parties in
interest's counsel, expressly stating in their motion for contempt that they intended to use
that contempt order in the underlying civil proceeding to suppress the use of improperly
obtained evidence. Id. Those circumstances are not present here, where the record does
not indicate that IBC's actions in the Entex case were part of a litigation strategy in the
underlying matter inconsistent with the right to arbitrate. 

 Furthermore, we are hesitant to hold that a party waives the right to arbitrate by
taking actions that are designed merely to preserve the status quo. IBC cites a case from
the Tyler Court of Appeals, which, while not binding on this Court, is very instructive. In
Structured Capital Resources Corp. v. Arctic Cold Storage, LLC, the Tyler Court of Appeals
held that a plaintiff had not waived its right to arbitration by filing a petition requesting that
the trial court order the defendant to place disputed funds into the registry of the court, so
as to prevent the defendant from dissipating the disputed funds. 237 S.W.3d 890, 894-95
(Tex. App.-Tyler 2007, orig. proceeding). The court held that the plaintiff's intent, whether
the ultimate issue of ownership of the funds was tried to a court or an arbitration panel, was
to preserve the status quo while ownership was being determined. Id. The act of
requesting an order protecting the status quo, the court held, was not inconsistent with a
later demand for arbitration. Id. Accordingly, the plaintiff did not substantially invoke the
judicial process in a manner sufficient to cause a waiver of the right to arbitrate. Id. While
not binding on this Court, we find this case highly instructive. (5)

 IBC intervened in the Entex case to preserve the status quo--IBC is not required
to sit by idly and watch its collateral disappear for fear that it may waive its right to arbitrate
any dispute that should later arise with respect to its right to the collateral. In fact, the
parties expressly agreed that IBC is entitled to exercise self-help remedies without waiving
its right to arbitration. Similar clauses allowing parties to protect the status quo have been
held enforceable by the courts. See, e.g., RGI, Inc. v. Tucker & Assocs., Inc., 858 F.2d
227, 230 (5th Cir. 1988); Lawrence v. Comprehensive Bus. Servs. Co., 833 F.2d 1159,
1163 (5th Cir. 1987); see also In re Greenpoint Credit, L.L.C., 2004 Tex. App. LEXIS
11594, at *6. Although the Cantus now apparently contest whether IBC has a valid
security interest in the accounts receivable and could properly intervene in the Entex and
Sanchez cases, that issue is not properly before us and has no bearing on whether such
a dispute must be compelled to arbitration. 

 Finally, IBC did not unconditionally inject itself into the Entex case. See, e.g., Miller
Brewing Co. v. Fort Worth Distrib. Co., 781 F.2d 494, 497-98 (5th Cir. 1986) (finding waiver
where plaintiff unconditionally filed suit, waited eight months to assert right to arbitrate, did
not pursue arbitration until after plaintiff's case was dismissed for want of prosecution three
years later, and filed multiple other lawsuits forcing defendants to litigate in several
forums); see also Practicehwy.com, Inc. v. Albany IFV Fertility & Gynecology, PLLC, No.
05-06-00222-CV, 2006 Tex. App. LEXIS 8956, at *9 (Tex. App.-Dallas Oct. 18, 2006, no
pet.) (mem. op.) (plaintiff did not waive right to arbitrate even though it unconditionally filed
suit--plaintiff gave notice of its intent to arbitrate on the date it filed suit); cf. Vireo v. Cates,
953 S.W.2d 489, 491 (Tex. App.-Austin 1997, pet. denied) ("A plaintiff who sues on an
arbitrable claim unconditionally, without having initiated arbitration of the claim or
demanding specific performance of the arbitration agreement, creates in the defendant a
right of election--the defendant may insist or not upon arbitration, as he chooses.")
(emphasis added). IBC's petition in intervention specifically reserves the right to arbitrate
any dispute that should arise as to its entitlement to the accounts receivable. 

 2. Substantial invocation by threatened intervention in the Sanchez case

 With regard to the Sanchez case, the Cantus argue that IBC threatened
intervention. The record does not demonstrate that IBC has taken any formal action to
intervene in the Sanchez case.

 IBC's threatened intervention in the Sanchez case is not a substantial invocation of
the judicial process. It is undisputed that the threatened interventions occurred on August
28, 2007 and on September 6, 2007, well before the Cantus amended their petition to
challenge IBC's rights to the accounts receivable. Even if we assume that the Cantus'
original petition in the underlying litigation on July 2, 2007 started the "dispute" as to IBC's
rights to the accounts receivable, the 360-day notice period has not yet passed, and IBC
is allowed under the terms of the arbitration agreement to participate in that litigation
without causing a waiver of its right to compel arbitration. See In re Oakwood Homes, 987
S.W.2d at 574; In re Centex Home Equity Co., LLC, 2004 Tex. App. LEXIS 11476, at *13. 
 Additionally, "pre-litigation efforts to negotiate can never be viewed as delay; to hold
otherwise would undermine any efforts to resolve a dispute short of trial." Nationwide of
Bryan, Inc. v. Dyer, 969 S.W.2d 518, 522 (Tex. App.-Austin 1998, no pet.); see also
Neatherlin Homes, Inc. v. Love, Nos. 13-06-328-CV & 13-06-411-CV, 2007 Tex. App.
LEXIS 1788, at * 27 (Tex. App.-Corpus Christi Mar. 8, 2007, orig. proceeding) (mem. op). 
IBC was within its rights to attempt to resolve its dispute with the Cantus by notifying the
Cantus of its right to intervene in the Sanchez case without waiving a right to compel
arbitration. See id. Under these circumstances, we cannot agree that IBC substantially
invoked the judicial process and acted inconsistently with its right to arbitrate the dispute
by its conduct in the Sanchez case. Id.

 3. Substantial invocation by responding to interpleader actions

 The Cantus point to three cases in which attorney's fees were deposited into a
court's registry as part of an interpleader action: the Howie case, the Abrego case, and the
Hampel case. In all three cases, IBC was named as an interpleader defendant with an
alleged interest in the funds deposited in the registry of the court.

 First, we note that IBC answered the interpleader action in the Abrego case on
October 18, 2007--again, this is within the 360-day notice period. IBC was entitled under
the terms of the agreements to answer this interpleader within the notice period without
causing a waiver of the right to arbitrate. 

 Furthermore, as a general proposition, merely responding to an action as a
defendant in order to prevent a default judgment is not a substantial invocation of the
judicial process sufficient to support a waiver finding. See Transwestern Pipeline Co., 809
S.W.2d at 593. Thus, the mere act of responding to an interpleader action is not evidence
of a waiver of the right to compel arbitration. Id. The record does not reflect that IBC took
any action in the Abrego case other than merely answering the petition in intervention and
asserting relevant defenses, including res judicata and collateral estoppel. Moreover,
IBC's answer in the Abrego case stated it was "subject to and without waiver of [IBC's]
rights to compel arbitration . . . ." Thus, IBC's actions in the Abrego case were not
inconsistent with its right to compel arbitration of the underlying dispute. Id.; see also
discussion at Part VI.B.1.

 With respect to the Howie case, the Cantus allege that IBC answered the
interpleader action but also moved for summary judgment, thereby substantially invoking
the judicial process. However, as IBC points out and as discussed above, the arbitration
agreements between the parties provide that the right to arbitrate arises "after a dispute
has arisen." IBC argues that, because the Cantus had never contested IBC's right to the
accounts receivable, there was no dispute between them at the time of the Howie case. 
Therefore, IBC's right to arbitration had not yet arisen and could not be waived. We agree. 
 The Howie case was an interpleader action filed by the law firm of Slack & Davis,
LLP on July 31, 2006, nearly a year before the Cantus filed the underlying lawsuit in this
case, based on allegedly conflicting claims asserted by the executor of John R. Howie's
estate, Mark Cantu, and IBC. IBC answered the interpleader, and the funds were
distributed to IBC pursuant to a settlement agreement before the Cantus filed the instant
lawsuit. IBC argues that at the time the Howie case was settled, the Cantus had never
disputed IBC's security interest in Mark Cantu's and the Law Offices of Mark Cantu's
accounts receivable. In fact, at the hearing on the motion to compel arbitration in this case,
Mark Cantu explicitly testified that at the time the funds were distributed in the Howie case
by agreement, there had been no dispute as to IBC's rights in the accounts receivable. Given that the right to arbitrate did not arise until a dispute existed between the
parties, and there is no evidence in the record that the Cantus contested IBC's rights to the
accounts receivable in the Howie case, there is no evidence that IBC acted inconsistently
with its right to arbitrate. See In re Oakwood Homes, 987 S.W.2d at 574; In re Centex
Home Equity Co., LLC, 2004 Tex. App. LEXIS 11476, at *13 (holding that creditor did
waive arbitration by delay, relying on arbitration clause's definition of "dispute" to hold that
neither prior foreclosure action by creditor nor did debtors' action to set aside foreclosure
implicated arbitration clause). Thus, even though IBC moved for summary disposition of
the Howie case, IBC's right to arbitration had not yet arisen. Moreover, that motion was
never ruled upon, and the Cantus voluntarily agreed to settle the case. Under these
circumstances, we cannot find that IBC acted inconsistently with its right to arbitrate. 

 Finally, in the Hampel case, IBC was also an interpleader defendant. That action
was filed on October 26, 2007. According to the Cantus, IBC is currently contesting the
disposition of attorney's fees paid into the registry of the court, but IBC has not yet
answered the interpleader action. Yet again, IBC is still within the 360-day notice period
and is entitled under the terms of the arbitration clause to participate in that litigation. 

 IBC apparently agreed to an order in the Hampel case requiring the plaintiff to
deposit the funds into the registry of the court and discharging the plaintiff from the suit. 
We cannot agree that IBC waived its right to compel arbitration by merely agreeing to an
order requiring the deposit of the disputed funds into the court's registry. Again, IBC was
entitled to seek relief to preserve the status quo. Structured Capital Resources Corp., 237
S.W.3d at 895. 

 4. Prejudice

 Nor do we find on this record that the Cantus were prejudiced by IBC's actions. 
First, the Cantus argue that IBC's actions have required them to litigate the validity of the
liens in multiple venues. However, IBC did not initiate any of these ancillary proceedings. 
Rather, IBC either intervened in already pending cases or was brought in as an
interpleader defendant. Specifically with regard to the Entex and Sanchez cases, the
record does not demonstrate that the courts in those cases have addressed the validity of
the security agreements. Furthermore, the record shows that before IBC intervened in the
Entex case, the law firm of Guerra & Moore Ltd., LLP. had appeared in the Entex case and
asserted a right to the attorney's fees owed to Mark Cantu and the Law Offices of Mark
Cantu. Thus, a dispute was already pending regarding ownership of the fees in that case
prior to any involvement by IBC. The Cantus have presented no evidence that they
expended any money or suffered any harm in addition to that already being incurred as a
result of Guerra & Moore's involvement in the suit. Additionally, the Cantus did not admit
any evidence of attorney's fees expended that allocated these costs to IBC's conduct. 

 Second, the Cantus complain that they have been prejudiced because substantial
sums of money are tied up in the registry of several courts as a result of disputes to the
attorney's fees involved in those cases. Again, IBC did not initiate any of these
proceedings. Thus, the Cantus cannot complain that IBC's conduct caused this alleged
harm.

 Third, the Cantus complain that IBC received money from the Howie case. 
According to IBC, those funds were paid to IBC pursuant to a settlement agreement, and
the Cantus never disputed IBC's entitlement to those funds. The Cantus likewise cannot 
now complain that they were prejudiced by a settlement agreement to which they agreed
voluntarily without ever disputing IBC's entitlement to the funds.

 Finally, the Cantus argue that they were forced to file an application for a temporary
injunction in the present lawsuit to prevent foreclosure on certain real property. This is not
evidence of prejudice that could support a waiver finding. See Nationwide of Bryan, Inc.,
969 S.W.3d at 522 ("Filing suit to avoid losing the right to sue does not demonstrate
prejudice."). The Cantus' filing of an application for a temporary injunction is not the result
of IBC's invocation of the judicial process inconsistent with a right to arbitration. Rather,
it is the result of their own challenge to the validity of IBC's security interests. See
Transwestern Pipeline Co., 809 S.W.2d at 593 (plaintiff's alleged prejudice resulted from
its own decision to initiate suit); see also Practicehwy.com, Inc., 2006 Tex. App. LEXIS
8956, at *10 (refusing to find prejudice because attorney's fees expended were "self
inflicted"). Accordingly, the trial court erred in finding a waiver of IBC's right to compel
arbitration. 

V. The Cantus' other defenses to arbitration

 IBC filed a motion to compel arbitration alleging that a valid agreement to arbitrate
governed the claims at issue. The trial court refused to compel arbitration based on its
determination that IBC waived its arbitration rights. Thus, IBC's petition for writ of
mandamus attacks this finding but does not address the other challenges the Cantus
raised in the trial court. 

 The Cantus alleged below that the arbitration clauses were fraudulently induced,
that the Cantus never assented to these clauses, and that the arbitration provisions
improperly denied them the right to trial by jury. In response to IBC's petition, the Cantus
argue that by failing to attack these potential grounds in its petition for writ of mandamus,
IBC has waived any challenge to the trial court's ruling. IBC argues that it was not required
to challenge these other potential grounds to refuse arbitration, citing summary judgment
cases wherein courts refused to consider grounds supporting summary judgment not
expressly ruled on by the trial court. See State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d
374, 380 (Tex. 1993); Carr v. Mobile Video Tapes, Inc., 893 S.W.2d 613, 620 (Tex.
App.-Corpus Christi 1994, no writ). Nevertheless, IBC briefed these additional issues in
its reply brief.

 Neither IBC nor the Cantus cite to an opinion in an original proceeding in which
these summary judgment precedents have been applied. Initially, we note that all the
cases cited by the Cantus involved situations where the trial court did not state a basis for
its ruling. See, e.g., Williams v. United Pentecostal Church Int'l, 115 S.W.3d 612, 614
(Tex. App.-Beaumont 2003, no pet.). In those circumstances, the appellant is required to
attack all possible grounds for the order or judgment or risk waiver of its complaints. Id. 
The same result does not obtain when the trial court states the basis for its ruling. In those
circumstances, the appellant is only required to attack the stated grounds for the ruling,
and the court of appeals will usually decline to address the alternative bases for the trial
court's order and will remand to the trial court for consideration of the additional grounds. 
See, e.g., State Farm Fire & Cas. Co., 858 S.W.2d at 380. 

 That is not to say that the court of appeals is without discretion to consider the
alternate grounds if the parties raise them for review and if the record is well developed
with regard to the alternate grounds. See Cincinnati Life Ins. Co. v. Cates, 927 S.W.2d
623, 624 (Tex. 1996). In the interest of judicial economy, a court of appeals is expressly
authorized to rule on grounds presented to the trial court but not expressly ruled upon that
could nevertheless support the trial court's order. Id. at 626. Given that the Cantus and
IBC briefed the fraud and mutual assent issues in great detail below, and the fraud issue
consumed most of the trial court's time and efforts at the hearing on the motion to compel
arbitration, we will address those issues now at the Cantus' invitation, in the interest of
judicial economy. See id. Because of the unique procedural posture of this case and
because IBC briefed the issues in its reply brief, we decline to hold that IBC waived its
challenge to the trial court's order, and we will address the parties' arguments.


 A. Fraudulent inducement

 The trial court spent significant time and effort addressing the parties' arguments
regarding the deemed admissions, ultimately concluding that those admissions could not
be withdrawn. IBC asks this Court to hold that the trial court abused its discretion in
considering the admissions. We need not decide the issue, however, because even
considering the admissions and the testimony at the hearing on the motion to compel, the
evidence does not demonstrate a valid defense to arbitration. 

 Both the admissions and the testimony demonstrate that in 1992 before Mark and
Roxanne Cantu signed the first of the fifty loan documents, Mark Cantu told his loan officer
that he would not sign any document containing an arbitration clause. According to Mark
Cantu, his loan officer told him that he would remove the arbitration clause from the loan
documents. Many of the loan documents, however, included both a merger clause and a
"no oral agreements" clause. For example, as early as March 25, 1994, Mark and
Roxanne Cantu signed a renewal, extension, and/or modification agreement that contained
an arbitration clause and a notice that stated the following directly above the signature
lines:

 (a) THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL
AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE
CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR
SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

 

 (b) THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE
PARTIES. 

Mark and Roxanne Cantu signed many other documents over the years that followed that
contained an arbitration clause and also included the same language directly above the
signature line where both Mark and Roxanne Cantu signed. (6) 

 Additionally, Mark and Roxanne Cantu both signed a single-page document entitled
"NOTICE NO ORAL AGREEMENTS" on multiple occasions. (7) That document states: 

 For good and valuable consideration, the sufficiency and receipt of which is
hereby acknowledged, we agree as follows:

 

 If the amount involved in your Loan Agreements exceed $50,000 in value,
then Texas law requires that you be notified of the following:

 

 THE WRITTEN LOAN AGREEMENTS REPRESENT THE FINAL
AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE
CONTRADICTED BY EVIDENCE OF PRIOR CONTEMPORANEOUS, OR
SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.


 THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE
PARTIES.


 The "Loan Agreements" referred to above include any one or more promises,
promissory notes, agreements, undertakings, security agreements, deeds of
trust or other documents, or commitment, or any combination of those
actions or documents which you may have signed or received relating to your
transaction with the International Bank of Commerce.


The Cantus allege that they did not read any of the loan documents before signing and did
not know that the loan documents contained arbitration clauses until this litigation ensued. 
 These allegations, particularly in light of the merger and "no oral agreements"
language, do not amount to fraud in the inducement of the arbitration agreements. See
TMI, Inc. v. Brooks, 225 S.W.3d 783, 795 (Tex. App.-Houston [14th Dist.] 2007, pet.
denied); In re GTE Mobilenet of S. Tex. Ltd. P'ship, 123 S.W.3d 795, 799-800 (Tex.
App.-Beaumont 2003, orig. proceeding). A party claiming fraud must prove actual and
justifiable reliance on a misrepresentation. TMI, Inc., 225 S.W.3d at 795; see In re GTE
Mobilenet of S. Tex. Ltd. P'ship, 123 S.W.3d at 799-800. On these facts, we cannot
conclude that the Cantus actually and justifiably relied on IBC's prior representations.

 Courts have consistently held that parties "must exercise reasonable diligence for
the protection of his or her own interests, and a failure to do so is not excused by mere
confidence in the honesty and integrity of the other party." TMI, Inc., 225 S.W.3d at 795. 
This rule has been consistently applied in the arbitration context--the Texas Supreme
Court has repeatedly held that a party is bound to an arbitration clause in a contract that
party signed even if the party never actually read, saw, or was informed of the arbitration
clause. In re U.S. Home Corp., 236 S.W.3d 761, 764 (Tex. 2007) (orig. proceeding) (per
curiam); In re AdvancePCS Health L.P., 172 S.W.3d at 608; EZ Pawn Corp., 934 S.W.2d
at 90. The law presumes that a party has read what he or she has signed. EZ Pawn
Corp., 934 S.W.2d at 90. For this reason, among others, "reliance upon an oral
representation that is directly contradicted by the express, unambiguous terms of a written
agreement between the parties is not justified as a matter of law." TMI, Inc., 225 S.W.3d
at 795.

 Although the Cantus allege that they never read the loan documents and did not
discover until recently that the loan documents contained arbitration clauses, these
allegations make no difference under existing law. The Cantus allege that they relied on
a prior oral representation, which is directly contrary to the merger and "no oral
agreements" clauses in the loan documents. As a matter of law, the Cantus could not
reasonably rely on prior oral representations contrary to the direct, clear, and unambiguous
language in the fifty documents they signed and then claim not to be bound by that
language merely because they did not read the documents. Accordingly, the trial court
could not have properly denied arbitration on the ground that the arbitration clauses were
fraudulently induced.

 B. Lack of mutual assent

 The Cantus claim that the arbitration clauses were not supported by mutual assent
because the Cantus relied on IBC's prior oral representation that the loan documents
would not include arbitration clauses. We disagree.

 "When an unambiguous writing has been entered into between the parties, the
courts will give effect to the intention of the parties as expressed or as is apparent in the
writing." Barker v. Roelke, 105 S.W.3d 75, 83 (Tex. App.-Eastland 2003, pet. denied). A
court may not consider parol evidence of the parties' intent that is not expressed in a
written contract unless it first finds that the agreement is ambiguous. In re GTE Mobilenet
of S. Tex. Ltd. P'ship, 123 S.W.3d at 799-800. If parties are allowed to vary the express
terms of an agreement by pointing to parol evidence of earlier representations, particularly
when a merger and "no oral agreements" clause is present, contracts would become
"nothing more than . . . scrap[s] of paper." Id. at 799 (quoting Howeth v. Davenport, 311
S.W.2d 480, 482 (Tex. Civ. App.-San Antonio 1958, writ ref'd n.r.e.)). 

 Because there has been no allegation that the arbitration clauses in the loan
documents are ambiguous, the Cantus' testimony and the deemed admissions relating to
IBC's prior representations are parol evidence that could not have been properly
considered. Id. The Cantus signed an agreement containing an arbitration clause, albeit
without reading the document, and the evidence of their assent to that provision is
established by the contract itself. In re U.S. Home Corp., 2007 Tex. LEXIS 915, at *4;
Barker, 105 S.W.3d at 83. "Like any other contract clause, a party cannot avoid an
arbitration clause by simply failing to read it." In re U.S. Home Corp., 2007 Tex. LEXIS
915, at *3-4. Accordingly, the trial court could not have properly denied arbitration based
on the Cantus' mutual assent argument.

 C. Loss of right to trial by jury

 Finally, the Cantus argued below that the arbitration clauses were too broad and
denied them the right to a jury trial. Even broad arbitration provisions, however, must be
enforced "unless it can be said with positive assurance that the arbitration clause is not
susceptible of an interpretation that covers the asserted dispute." Jabri v. Qaddura, 108
S.W.3d 404, 411 (Tex. App.-Fort Worth 2003, no pet.). Moreover, the Texas Supreme
Court has expressly held that parties may agree to waive the right to trial by jury. In re
Prudential Ins. Co. of Am., 148 S.W.3d 124, 131-33 (Tex. 2004). The motion to compel
arbitration could not have properly been denied on this ground.

VI. Conclusion

 In conclusion, IBC demonstrated a valid arbitration agreement governed by the FAA
covering the underlying claims, and the Cantus did not raise a valid defense to arbitration. 
Therefore, the trial court had no discretion to refuse to compel arbitration. The parties
have not briefed whether the trial court properly issued a temporary injunction in spite of
the arbitration clause. An interlocutory appeal has been filed by IBC in cause number 13-07-696-CV. Our finding that the trial court erred by denying IBC's motion to compel
arbitration does not, by itself, require reversal of the temporary injunction, which is subject
to interlocutory appeal. GTE Mobilenet of S. Tex. Ltd. P'ship v. Cellular Max, Inc., 123
S.W.3d 801, 802-03 (Tex. App.-Beaumont 2003, pet. dism'd by agr.); In re GTE Mobilenet
of S. Tex. Ltd. P'ship, 123 S.W.3d at 797. Rather, we must consider the validity of the
temporary injunction in the interlocutory appeal. 

 We are confident that the trial court will comply with our holding today. Accordingly,
we conditionally grant the petition for writ of mandamus. The writ will not issue unless the
trial court fails to comply with this opinion.


 ______________________

 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and 

filed this the 18th day of January, 2008.

 
1. Presiding judge of the 370th District Court of Hidalgo County, Texas.
2. 9 U.S.C. §§ 1-16.
3. Tex. Civ. Prac. & Rem. Code Ann. §§ 171.001-.098 (Vernon 2005).
4. The Cantus also cite In re Valero Energy Corp., 968 S.W.2d 916, 916 (Tex. 1998) (orig. proceeding)
(per curiam), for the argument that there is no jurisdictional basis for mandamus where the movant failed to
establish an effect on interstate commerce. However, that case does not discuss or even mention the
interstate commerce requirement.
5. The Cantus argue that this case has no precedential value because it is unreported, citing Texas
Rule of Appellate Procedure 47.7. In the time since the briefs were filed, however, it has been released for
publication in the Southwest Reports. We note, however, that the Cantus misread rule 47.7, which must be
read in conjunction with Texas Rule of Appellate Procedure 47.2--in civil cases, courts of appeals are now
prohibited from designating opinions "do not publish." Tex. R. App. P. 47.2(a)-(b). This case certainly carries
precedential value for the Tyler district, and the Cantus have provided no reason to ignore it. Finding it
persuasive, we follow the holding. See also Southwest Indus. Import & Export v. Wilmod Co., 524 F.2d 468,
469-70 (5th Cir. 1975) (engaging in self-help remedies does not waive the right to arbitration).

6. Mark and Roxanne Cantu signed additional renewals and/or extensions containing an arbitration
clause and the "no oral agreements" language on at least ten other occasions between August 29, 2000 and
November 28, 2005. Additionally, they signed real estate lien notes containing an arbitration clause and the
"no oral agreements" language on at least seven other occasions between July 13, 1999 and April 27, 2007. 
Finally, Mark and Roxanne Cantu signed documents entitled "deed of trust, assignment of rents, security
agreement and financing statement" containing an arbitration clause and the same "no oral agreements"
language on at least nine other occasions between July 13, 1999 and April 27, 2007.
7. Mark and Roxanne Cantu signed "Notice No Oral Agreements" documents on at least four other
occasions between August 20, 1997 and November 28, 2005. Additionally, Mark and Roxanne Cantu signed
an "Extension and/or Modification Agreement Commercial Indebtedness" document, which consisted of a
single page and included the same language.